**Garland LEWIS, Appellant**

v.

**DISTRICT OF COLUMBIA, et al.**

No. 85–5812.

United States Court of Appeals, District of Columbia Circuit.

Argued June 3, 1986.

Decided June 20, 1986.

Karen M. Schneider, with whom Greta C. Van Susteren, Washington, D.C., was on brief, for appellant.

Michele Giuliani, Asst. Corp. Counsel, with whom John H. Suda, Acting Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on brief, for appellees.

Before GINSBURG, STARR and SILBERMAN, Circuit Judges.

Opinion PER CURIAM.

PER CURIAM:

Garland Lewis was arrested on the night of August 8, 1983, for drug-related criminal offenses. He brought this action for damages based on the alleged excessive force used by police officers in the course of the arrest. Pursuant to a pretrial ruling, the district judge admitted evidence at trial of Lewis' past drug use and past arrests. The jury returned a verdict for Lewis but awarded only $7,500, significantly less than Lewis' conceded medical expenses for injuries suffered during the arrest. Lewis now appeals the trial court's decision to admit the evidence of drug use and arrests; he contends that admission of the evidence violated Federal Rules of Evidence 403 and 404(b). We affirm the district court's decision.

At trial, Lewis and Officer Brown, the police officer who shot Lewis, presented materially different versions of the episode in suit. Brown testified that he and his partner, in plainclothes and an unmarked car, approached Lewis on the street and arranged for a sale of drugs. Brown then showed Lewis his badge, and Lewis fled, turned a corner, and fell. As Brown pursued, gun in hand, Lewis regained his feet and lunged for the gun; in the scuffle the gun discharged, wounding Lewis in the jaw. Lewis testified, on the other hand, that after he and Brown discussed how much marijuana Lewis possessed, Brown got out of his car and, without displaying his badge, demanded that Lewis give him all the marijuana. Because he thought Brown was trying to rob him, Lewis fled, turned a corner, and fell. Brown pursued him, knelt down next to him on the ground, and, after some hostile words, shot him through the jaw. Lewis and Brown both testified that Brown then handcuffed Lewis and interrogated him while an ambulance arrived.

Lewis underwent surgery on his jaw and until December 1983 was unable to eat solid food or to work. He incurred over $24,000 in medical expenses. Lewis also claimed that he experienced emotional suffering and nightmares as a result of the arrest.

Seeking one million dollars in damages, Lewis commenced this action in district court against various police officers and the District of Columbia; his complaint

stated common law and constitutional claims for relief. Before trial, Lewis filed a motion in limine to preclude the introduction of evidence of his history of drug use and his prior arrests. The trial judge heard pretrial argument on the motion, ruled the evidence admissible, and carefully instructed the jury on its use. *See* Tr. IV 156–57. After a three day trial, the jury found that Brown had violated Lewis' constitutional rights but awarded only $7,500 in damages. Believing that the jury awarded less than full compensatory damages because of the evidence at issue, Lewis now appeals the admission of the evidence, arguing that it was inadmissible under Federal Rules of Evidence 404(b) and 403.

■ ■ We hold that the district court committed no reversible error in admitting the evidence. Rule 404(b) bars the admission of evidence of past "bad acts" to show that the actor acted in conformity therewith in the present instance, but allows the introduction of such evidence for other purposes. The jury instruction in this case articulately explained that the evidence in question was admitted only for "other purposes." The trial judge specifically instructed the jury that the evidence of Lewis' drug use and arrests "was not admissible to prove Mr. Lewis' bad character or ... to show that he acted in conformity therewith." Tr. IV 157. Rather, the court instructed, the jury could consider the evidence only for two limited purposes: first, to determine "whether Mr. Lewis' flight from Officer Brown was in fact the result of a mistake on Mr. Lewis' part or whether ... Mr. Lewis ran because he intended to avoid arrest"; and second, to measure "the extent of any damages [that] proximately resulted from any wrongful actions of the defendant." *Id.*

The evidence at issue was probative for these other purposes. The fact that Lewis previously had been approached on the street and arrested by police officers makes less plausible his assertion that he did not know Brown was a police officer; and the doubt cast on that assertion, in turn, may make less creditworthy Lewis' claim that he did not lunge for Brown's gun. Similarly, Lewis' past use of drugs suggests that some of the suffering and nightmares he experienced following the shooting may have been proximately caused by drug withdrawal and not the shooting; the jury therefore would be aided by this evidence in measuring fairly the extent of damages. Accordingly, we hold that the prior arrest and drug use evidence was admissible under Rule 404(b).

■ Rule 403 provides that even if evidence is admissible under other provisions, such as Rule 404(b), it is still inadmissible if its prejudicial effect substantially outweighs its probative value. This weighing process is committed to the sound discretion of the trial judge; the resultant ruling will be overturned on appeal only upon a clear showing that the district court abused its large discretion. *See Miller v. Poretsky,* 595 F.2d 780 (D.C.Cir.1978). Lewis has made no such showing.

Lewis relies principally on two features of the trial court proceedings for his argument that the evidence's prejudicial effect outweighed its probative value. First, he points to the trial judge's statement that the judge would admit evidence of drug use because it "goes to the type of individual who is suing in this case, who wants a million dollars from the District of Columbia or from the police officers." Tr. I 24. Out of context, this statement may appear to suggest that the trial judge admitted evidence of drug use precisely because it was prejudicial: it would establish the "bad character" of Lewis. The statement occurred, however, out of the jury's hearing in the course of a conversation between the court and counsel regarding whether Lewis' heroin withdrawal contributed to his suffering after the shooting. *Id.* at 21–24. In context, then, the court's comment suggests merely that the evidence is relevant to whether Lewis contributed to his own suffering by his drug use, so that his damages might be considerably less than one million dollars.

Next, Lewis argues that the amount of the jury award demonstrates that the prejudicial effect of the evidence outweighed its probative value: the jury found Officer Brown liable but awarded only $7,500 in damages, although Lewis' medical expenses alone exceeded $24,000. The jurors, according to Lewis, must have been reluctant to award full and fair damages because of a bias against drug users who have been repeatedly arrested. Another explanation, however, would also account for the limited award: the jury may have found Brown liable not for the shooting but only for his rough treatment of Lewis after the shooting.[1] Under this explanation, the jurors used the contested evidence in no prejudicial way; rather, they awarded complete, albeit approximated, damages for the particular conduct for which they found Brown liable. Thus, Lewis has not made a clear showing that the trial judge abused his discretion when he ruled that the probative value of the evidence was not substantially outweighed by the danger of prejudicing, confusing, or misleading the jury.

For the reasons stated, we hold that the district court acted lawfully and within the bounds of its discretion in ruling the prior drug use and arrest evidence admissible. Accordingly, the decision of the district court on the motion in limine, and the judgment entered on the jury's verdict, are

*Affirmed.*

---

**1.** Lewis testified that after Brown shot him, Brown searched him, interrogated him, handcuffed him, and left him lying on the ground without determining the nature of his injuries. *See* Tr. I 102–03, 108.