Eleanor T. JOHNSON, et al., Appellants

v.

**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY.**

No. 88–7073.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 13, 1989.

Decided Aug. 22, 1989.

U.S.C. § 717r(a), or have been mooted by other acts of the parties.

David T. Smorodin, Washington, D.C., with whom W. David Allen, Seabrook, Md., was on the brief, for appellants.

Bruce P. Heppen, with whom Fredric H. Schuster, Gerard J. Stief, Robert J. Kniaz and Robert L. Polk, Washington, D.C., were on the brief, for appellee.

Sara E. Lister also entered an appearance for appellee.

Before MIKVA and RUTH BADER GINSBURG, Circuit Judges, and HOGAN,* District Judge.

Opinion for the Court filed by Circuit Judge MIKVA.

MIKVA, Circuit Judge:

Eleanor and Franklin Johnson's daughter was struck and killed by a Washington Metropolitan Area Transit Authority ("WMATA") subway car. The district court dismissed their suit against WMATA on summary judgment. We conclude that the district court erred in finding that certain internal inconsistencies in the testimony of two witnesses rendered that testimony inherently incredible. Because the district court disregarded aspects of that testimony which were favorable to appellants in evaluating whether there were genuine issues of material fact, we reverse and remand this case to the district court for further proceedings.

## I. BACKGROUND

On March 20, 1986, Devora Johnson, a 29–year–old medical claims examiner and mother of a three-year-old, left work in Rockville, Maryland, rode the subway partway home, and ostensibly waited to change trains at the Metro Center station. What happened next is the subject of this suit. All the witnesses say that she leapt, purposefully, onto the subway tracks as the train was approaching. Even appellants conceded at oral argument that all the evidence supported the conclusion that Devora had jumped, and that no evidence suggested she fell or was pushed. Devora had a history of mental illness. She was hospitalized seven times with diagnoses such as schizophrenia, paranoia and manic depressive syndrome, and twice as having "suicidal ideations."

It is disputed, however, whether the train was far enough away from Devora when she jumped to have been able to stop before hitting her. The subway train was operating automatically when it entered

the station, programmed by computer. At some point, the train operator saw Devora on the tracks and pushed the emergency stop button and the brakes engaged. The braking stopped the train short of its usual stopping point, but not enough to avoid the accident. The police questioned more than a dozen witnesses, whose versions of the event are not wholly reconcilable. Some said that the train was so close when Devora jumped that she was hit in mid-air. Others said that she jumped onto the tracks, then laid down on them and waited until the train struck her. The medical examiner's testimony—that the victim's injuries were consistent with being run over but not with being hit in mid-air—supports the version that she was lying down when hit. This version is also supported by testimony from a WMATA maintenance employee that he found a coil under the front of the subway car broken after the accident, but there were no marks or indications of collision on the front of the car.

The witnesses were asked to estimate the distance between Devora and the train at the time she jumped. Their estimates vary from 4 to 45 feet. It is undisputed that if anything within this range is correct, the train could not have stopped in time under any circumstances. When the train entered the station, it was travelling 28.66 miles per hour, or 41.95 feet per second. When the operator pushed the emergency button it was travelling 15.65 miles per hour, or 22.96 feet per second. Even at the slower speed, the train would have required 157 feet to stop.

However, two witnesses also testified as to how much time elapsed between the jump and the collision. Ronald Thompson, a WMATA employee at the time of the accident, estimated that 5 to 15 seconds elapsed. He also quoted Joanne Funderburk, a current WMATA employee, as having said at the time that she thought it was 20 to 30 seconds. A second witness, Ricardo Louis Moore, estimated the interval at 10 seconds. Appellants presented expert

* Of the United States District Court for the District of Columbia, sitting by designation pursuant to 28 U.S.C. § 292(a).

testimony that in 10 seconds an attentive train operator could have seen the victim jump, pushed the brake button and stopped the train before it hit her. Thompson and Moore also estimated that the distance between Devora and the train was 10 to 20 feet, at the time she jumped.

After the accident, following standard WMATA procedure, the train operator was tested for the presence of alcohol or drugs. He tested positive for marijuana and cocaine. A validating test, using thin layer chromatography, was performed. No tests showing the quantity of drugs taken or the current level of impairment, if any, were performed. The operator claimed, in his deposition, that he had not used marijuana or cocaine in the previous three months.

## II. DISCUSSION

At the core of the district court's grant of summary judgment to WMATA is its discrediting of Thompson's and Moore's testimony. The court found, and we do not disturb its findings, that WMATA was not negligent in failing to prevent Devora from jumping and, in any case, any negligence claim was barred by Devora's assumption of the risk or at least contributory negligence. This left the question of whether the train operator had the last clear chance to prevent Devora's death. Having put aside the testimony that the train operator had some 10 seconds or so to respond after Devora jumped, the court concluded from the remaining evidence that not even the most diligent operator could have stopped the train in time and therefore the last clear chance doctrine was inapplicable.

The district court's grant of summary judgment can be upheld only if, viewing the evidence in the light most favorable to the Johnsons, there is no genuine issue of material fact. See Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); Fed.R.Civ.P. 56(c); cf. Capital Transit Co. v. Gamble, 160 F.2d 283 (D.C.Cir.1947) (reversing denial of judgment NOV where the only evidence introduced to support plaintiff's negligence claim was equally consistent with a finding of no negligence and therefore was insufficient to establish either). If reasonable minds could differ as to the import of the evidence, summary judgment cannot be sustained. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250–51, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986).

The district court explained that it disregarded Thompson's and Moore's estimate of the number of seconds that elapsed as inherently incredible because it was contradicted by a number of other witnesses and because it was inconsistent with the same witnesses' estimations of distance. We conclude that neither circumstance supports the court's excluding this testimony from its summary judgment determination.

The fact that there were witnesses whose testimony, that the train was in the station and only a few feet from Devora when she jumped, contradicted that of Thompson and Moore plainly does not render Thompson's and Moore's testimony incredible. It merely demonstrates that the issue is disputed. The judge's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter but only to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249, 106 S.Ct. at 2510.

■ Judges may, under certain circumstances, lawfully put aside testimony that is so undermined as to be incredible. The removal of a factual question from the jury is most likely when a plaintiff's claim is supported solely by the plaintiff's own self-serving testimony, unsupported by corroborating evidence, and undermined either by other credible evidence, physical impossibility or other persuasive evidence that the plaintiff has deliberately committed perjury. See Ralston Purina Co. v. Hobson, 554 F.2d 725 (5th Cir.1977) (upholding judgment NOV because claimant's testimony as to how and why chickens were supposed to have died was unsupported by other evidence and inconsistent with the known physical facts and considerable expert testimony on chicken behavior); Law v. Virginia Stage Lines, 444 F.2d 990 (D.C.Cir. 1971) (upholding judgment NOV despite

plaintiff's self-serving testimony because it was unsupported by other evidence and contradicted by disinterested as well as interested witness); *Southern Pacific Co. v. Matthews,* 335 F.2d 924 (5th Cir.1964) (reversing judgment for plaintiff because it was supported only by his self-serving testimony which was contradicted by disinterested witness testimony and undisputed proof as to the physical layout of the railroad right of way), *cert. denied,* 379 U.S. 970, 85 S.Ct. 668, 13 L.Ed.2d 562 (1965); *Washington, Marlboro & Annapolis Motor Lines v. Maske,* 190 F.2d 621 (D.C.Cir. 1951) (reversing judgment for plaintiff because it was supported only by her self-serving testimony which was not only contradicted by numerous disinterested witnesses but also undermined by proof of her earlier statement that the opposite was true), *cert. denied,* 342 U.S. 834, 72 S.Ct. 56, 96 L.Ed. 631 (1952).

■ In contrast, both Moore and Thompson are disinterested witnesses. Their testimony that some 10 seconds or so elapsed after the victim jumped and before she was hit is not, in itself, inherently implausible or contradicted by undisputed physical evidence. There is no evidence suggesting that either has perjured himself.

The difficulty that the testimony presents is that neither Thompson nor Moore can be correct about both how much time elapsed *and* how far the train was from Devora when she jumped. But that the time and distance estimates are incompatible with each other does not resolve which is correct. Nor does this kind of inconsistency, between quantitative estimates of a momentary event, render the entire testimony untrustworthy. Viewing Thompson's and Moore's testimony from the point of view most favorable to the Johnsons, it supports the conclusion that the train operator had enough time to stop the train without harming their daughter. We find, therefore, that there is a genuine issue as to whether the collision could have been avoided, an issue appropriately resolved by a jury. *See Tyler v. Starke,* 128 F.2d 611 (D.C.Cir.1942) (testimony as to distance and speed of driver when he saw

pedestrian sufficient to send question of whether he could have avoided accident to the jury); *Chr. Heurich Brewing Co. v. McGavin,* 16 F.2d 334, 336 (D.C.Cir.1926) (last clear chance must be submitted to jury unless facts are undisputable, established by evidence that is free from conflict, and inference from the facts is so certain that all reasonable people must agree); *see also Newman v. Eisenberg,* 213 A.2d 584, 585–86 (D.C.1965) (affirming fact-finding that at least a few seconds existed in which accident could have been avoided despite contrary evidence in record).

■ This is not, however, the end of the matter, as WMATA argues that the grant of summary judgment can be affirmed on other grounds. First, WMATA argues that one of the essential elements of the last clear chance doctrine is that both plaintiff's and defendant's negligence must have placed the decedent in a position of peril and that the record contains no evidence tending to show such antecedent negligence by WMATA. This characterization of the last clear chance doctrine is erroneous. Under District of Columbia law, it is not necessary for the defendant to have been negligent before he discovered or should have discovered the dangerous position in which the plaintiff had negligently put himself. The defendant runs afoul of the last clear chance doctrine when he fails to use, with the appropriate standard of care, the ability which he then has to prevent injury to the plaintiff. *See Byrd v. Hawkins,* 404 A.2d 941 (D.C.1979); *see also Drapaniotis v. Franklin,* 504 F.2d 236, 237–38 (D.C.Cir.1974); *Bowman v. Redding & Co.,* 449 F.2d 956, 970 (D.C.Cir. 1971) (supplemental opinion). Thus, it is unnecessary to consider whether WMATA is correct that no evidence supports prior negligence on its part, as such evidence is not required to withstand summary judgment.

■ Next, WMATA argues that the record contains no evidence to support the claim that, in failing to avoid the accident, it breached the applicable standard of care. The district court found, and we agree, that under District of Columbia law, Devora

Johnson became a trespasser when she jumped onto the tracks. Trespassers may only recover for "intentional, wanton or willful injury or maintenance of a hidden engine of destruction." *Holland v. Baltimore & O.R. Co.*, 431 A.2d 597, 599 (D.C. 1981) (en banc). Appellants claim that the train operator wantonly injured their daughter because he was operating the train under the influence of narcotic drugs, with reckless disregard for human life. Under the doctrine of respondeat superior, WMATA would be liable if its operator wantonly injured the decedent. *See Weinberg v. Johnson*, 518 A.2d 985, 988 (D.C. 1986). WMATA argues that the drug tests performed did not test whether the train operator was under the influence of the drugs at the time of the accident, that there was no expert testimony establishing any link between the test results and impairment, and that no other evidence that the driver was under the influence of the drugs and impaired at the time of the accident was submitted.

■ The results of the drug tests would not be admissible if they were found to be either irrelevant or if their relevance was substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. *See* Fed.R.Evid. 401–403. The district court analyzed briefly whether the lack of expert evidence rendered the test results inadmissible but left ambiguous whether it based summary judgment on a finding that the tests were inadmissible or primarily on its conclusion that even a sober operator would have been unable to stop the train in time. The court also did not consider, in analyzing admissibility, the possible relevance of two other pieces of evidence: (1) the train operator's presumably false testimony that he had not taken any drugs in the past three months, and (2) WMATA's failure to have more thorough tests performed which would have indicated more about when the operator took the drugs, and whether he was impaired at the time of the accident. The district court did not consider the possible relevance of these pieces of evidence, although there was expert testimony on the record that a neurological test would have

shown whether and to what extent the operator was impaired, and did not unambiguously reach the. question of admissibility. Because questions of admissibility are largely committed to the discretion of the trial court, we remand. *See Lewis v. District of Columbia*, 793 F.2d 361, 363 (D.C. Cir.1986). The question to be decided on remand is whether—if the district court assumes, as it must in addressing this issue, that there was sufficient time to stop the train—the results of the drug tests are probative on the issue of whether the train operator behaved wantonly or merely negligently, and if so, whether that relevance is not substantially outweighed by the danger of unfair prejudice. Probativeness must be considered in light of the evidence of the operator's false testimony and WMATA's failure to conduct further tests. If the trial judge concludes that the drug test results are not admissible, then summary judgment for WMATA would be appropriate due to the lack of evidence that WMATA breached the applicable standard of care.

■ Finally, we have no cause to hold the last clear chance doctrine inapplicable in a suicide case. To begin with, it is to be remembered that we are a federal court sitting in diversity. Our task is merely to divine and apply District of Columbia law. *See Hall v. C. & P. Telephone Co.*, 793 F.2d 1354, 1356–57 (D.C.Cir.1986). While we find that the District has long recognized the doctrine of last clear chance, *see, e.g., Terminal Taxicab Co. v. Blum*, 298 F. 679 (D.C.Cir.1924), our review uncovers no D.C. case in which a suicide exception to that doctrine was found.

Nor have the D.C. courts given any indication that such an exception would be found if a case properly presented the issue. In *Toy v. District of Columbia*, 549 A.2d 1 (D.C.1988), plaintiffs sued on behalf of a decedent who hanged himself while in jail awaiting a hearing on the charge of drunken driving. Plaintiffs claimed, *inter alia*, that the District had the last clear chance to save the decedent but had failed to have certain equipment on hand and to administer cardiopulmonary resuscitation

properly. That the decedent had attempted suicide was undisputed. The trial court permitted the question to go to the jury on the last clear chance claim as well as primary negligence claims, and then, after the jury returned a verdict for plaintiffs, granted judgment notwithstanding the verdict for defendants on the grounds that there was insufficient evidence showing that defendants had had a last clear chance to save the decedent's life or had failed to respond properly. The appeals court affirmed on the ground that there was no showing that defendants' actions violated an appropriate standard of care. Neither court dismissed the last clear chance claim because the decedent deliberately put himself in peril nor did either assume without deciding that the doctrine applied even to a suicide attempt. Both courts simply treated the case as any other involving the last clear chance doctrine.

Moreover, we have not found a single jurisdiction that has recognized a suicide exception. Admittedly, this is a rare issue and there is little evidence in either direction, but what scant evidence there is tends to support the viability of the last clear chance doctrine even when the decedent places himself in peril by attempting suicide. In *Rinaldo v. New York City Transit Authority*, 39 N.Y.2d 285, 383 N.Y.S.2d 571, 347 N.E.2d 897 (1976), plaintiff, who survived being hit by a subway car, claimed to have been pushed onto the tracks; the defendant submitted evidence supporting its claim that plaintiff had tried to kill himself. Following a verdict and judgment for defendant, plaintiff appealed on two grounds, one of which was that the last clear chance instruction did not permit the jury to apply the doctrine if it found that plaintiff had tried to commit suicide but that the train could have stopped in time to avoid hitting him. The court upheld the judgment on the ground that the instruction did allow the jury to apply the doctrine under those circumstances. *Rinaldo*, 383 N.Y.S.2d at 572–73, 347 N.E.2d at 898. The highest courts of both Missouri and Kentucky have not ruled on last clear chance in a suicide case, but have held the doctrine applicable even for reckless

plaintiffs. *See Wyckoff v. Davis*, 297 S.W.2d 490 (Mo.1957); *Brooks v. New Albany & L. Electric R. Corp.*, 280 Ky. 157, 132 S.W.2d 777 (1939). Both courts reasoned that the last clear chance test is not affected by how a plaintiff came to be, or remain, in peril. *Wyckoff*, 297 S.W.2d at 494; *Brooks*, 132 S.W.2d at 780. Missouri's highest court has also speculated on whether the recklessness rule would also stretch to suicide and concluded that no precedent prevented such a result. *State v. Bland*, 354 Mo. 868, 191 S.W.2d 660 (1945).

In the absence of local or widespread national precedent, we are unprepared to assume that the District of Columbia Court of Appeals would carve out a suicide exception from its long-established last clear chance doctrine. Essentially, this is a question of policy, a decision as to when the value of human life places a heavy responsibility on all comers. Without any indication from the District's courts that attempted suicide is an act unlike any other that obviates this obligation to preserve life, we cannot take it upon ourselves to reorder the local government's priorities. Indeed, the District of Columbia's court's recent acquiescence in the applicability of the doctrine in *Toy* suggests that such interference would be most unwelcome and altogether inappropriate.

The District of Columbia does recognize a rule that suicide is a deliberate, intentional, and intervening act which precludes recovery in most cases for negligent acts alleged to have caused the decedent to take his own life. *District of Columbia v. Peters*, 527 A.2d 1269, 1275 (D.C.1987) (decedent committed suicide after being paralyzed from the chest down from a wound inflicted during his arrest by the arresting officer). Thus, under D.C. law, a suicide attempt is deemed to have broken the causal chain between any negligent act committed earlier and the suicide victim's injury. Such a rule, however, sheds no light on the case at bar. There are no remaining allegations that WMATA failed to prevent Devora Johnson from attempting suicide or that WMATA's negligence drove her to it. The allegedly negligent act of which plain-

tiffs complain—failure to stop the train—was committed after Devora jumped onto the tracks. The *Peters* rule limits the duty to prevent suicide; it does not modify the duty to prevent injury to others when their fate has fallen into one's hands.

### III. Conclusion

In view of the foregoing, we conclude that summary judgment for WMATA in the Johnsons' negligence suit was premature. There is a genuine issue of material fact as to whether the train operator could have seen Devora Johnson earlier and responded more quickly, thereby stopping the train before it killed her. If the trier finds that the accident could have been avoided, there are genuine issues to be resolved as to several other elements of the last clear chance doctrine. There is also the knotty question of whether the drug test results are admissible, and if so, in what manner. Given our holding as to the significance of the conflict in witness testimony between time and distance estimates, the trial court might want to reconsider its decision not to compel the production of the statements made by non-employee witnesses to WMATA investigators at the scene. Only defendants and the police, not plaintiffs, had representatives at the scene of the accident. Moreover, while plaintiffs had legal access to the names of witnesses questioned by police, not all the witnesses questioned by WMATA were questioned by the police and WMATA refused to turn over even its witness list to plaintiffs until ordered to by the court one and one-half years later. These statements may contain additional information on the time and distance question, or others in the case such as the demeanor of the train operator. Such contemporaneous statements cannot be replicated by subsequent discovery. Because we find that summary judgment is not appropriate as the case stands, we reverse the judgment of the district court and remand for further proceedings consistent with this decision.

*It is so ordered.*