**Eleanor T. JOHNSON, et al., Plaintiffs,**

v.

**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, Defendant.**

**Civ. A. No. 86–3110–LFO.**

United States District Court, District of Columbia.

Sept. 10, 1991.

Allen T. Eaton, W. David Allen, David T. Smorodin, Eaton, McClellan & Allen, Washington, D.C., for plaintiffs.

Fredric W. Schuster, Associate Gen. Counsel, Bruce P. Heppen, Asst. Gen. Counsel, Robert J. Kniaz, Deputy Gen. Counsel, Robert L. Polk, Gen. Counsel, Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

OBERDORFER, District Judge.

On July 1, 1991 defendant Washington Metropolitan Area Transit Authority (WMATA) filed a motion to certify, pursuant to 28 U.S.C. § 1292(b), the issue of last clear chance for interlocutory review. This motion stemmed from two possibly inconsistent holdings of the United States Court of Appeals for the District of Columbia. On appeal from an earlier decision in this case, the Court of Appeals held that under District of Columbia law the last clear chance doctrine did not require that defendant negligently place decedent in her position of peril. *Johnson v. Washington Metro. Area Transit Auth.*, 883 F.2d 125, 129 (D.C.Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1473, 108 L.Ed.2d 610 (1990). Given the Court of Appeals' holding, this court did not address on remand the issue of defendant's negligence before it discovered or should have discovered the peril in which the plaintiff had placed herself. *See* Memorandum of May 21, 1991, 764 F.Supp. 1568. However, a week after this court filed its order a different panel of the Court of Appeals held that the last clear chance doctrine requires that the negligence of both the decedent and the defendant must have placed the decedent in her position of peril. *See Andrews v. Wilkins,* 934 F.2d 1267, 1272 (D.C.Cir.1991).

█ Although typically the law of the case doctrine precludes further review of legal issues decided in earlier proceedings of the same case, courts need not always adhere to this doctrine. It will give way when there are significant countervailing concerns—*i.e.*, " 'the evidence on a subsequent trial was substantially different, controlling authority has since made a contrary decision of the law applicable to such issues, or the decision was clearly erroneous and would work a manifest injustice.' " *Melong v. Micronesian Claims Com'n*, 643 F.2d 10, 17 (D.C.Cir.1980) (quoting *White v. Murtha*, 377 F.2d 428, 432 (5th Cir.1967)). In this case, defendant argues that the intracircuit split between the panels in *Johnson* and *Andrews* necessitates departure from the law of the case doctrine.

In his concurrence in *Halperin v. Kissinger*, 807 F.2d 180, 195 (D.C.Cir.1986) (Mikva, J., with whom Robinson, J., joined, concurring), Judge Mikva observed that "the intervening law of which *Murtha* speaks primarily means law deriving from statute or a higher court." He did not, however, categorically rule out departure from the law of the case doctrine because of intervening decisions of the same or similar courts. *See id.* Instead he determined that,

> even assuming that a court may under certain circumstances depart from the law of the case because of an intervening decision by a different panel of the same court, this case is not one in which to take that step.... [N]one of th[e intervening] cases is on all fours with the case *sub judice* and none offers sufficiently cogent and overarching analysis of the reasonableness issue to control in this case.

*Id.* at 195–96.

In fact, in an earlier opinion that was not cited by Judge Mikva, a panel of the Court of Appeals eschewed the law of the case in favor of a subsequent contradictory holding of a different panel of the same court. *See Irons v. Diamond*, 670 F.2d 265 (D.C.Cir.1981). Acknowledging the "fundamental inconsistency" between the two

opinions the Court "decline[d] to resolve it through the law of the case doctrine." *Id.* at 268. The Court observed that "[w]hile this path would lead us out of the present thicket, it would do little if anything to cut away the tangled legal underbrush and clarify the controlling law of this circuit." *Id.*

Here too the court could simply follow the law of the case; however, this would do little to "clarify" the law. Given the possible conflict on this central issue, there is a high likelihood that it would be appealed and possibly remanded resulting in additional cost and delay. Moreover, following the law of the case would require a full jury trial. Resolution of this issue on interlocutory appeal might potentially conserve judicial resources by allowing the case to be resolved on summary judgment.

Given the considerable uncertainty as to the applicable standard of the last clear chance doctrine in the District of Columbia and the interests of judicial economy, it is this 9th day of September, 1991, hereby

ORDERED: that defendant's Motion to Certify is GRANTED, and it is further

ORDERED: that the May 21, 1991 Order and Memorandum is amended to state:

The Court of Appeals' decision in *Andrews v. Wilkins*, 934 F.2d 1267 (D.C.Cir. 1991), may be inconsistent with the earlier decision of another panel of that Court in this case, *Johnson v. Washington Metro. Area Transit Auth.*, 883 F.2d 125 (D.C.Cir. 1989). Accordingly, the following questions are certified for interlocutory review:

(1) Does the last clear chance doctrine, as it is applied in the District of Columbia, require plaintiffs to show that defendant's negligence placed the decedent in her position of peril or only that defendant acted negligently in failing to use, with the appropriate standard of care, the ability which he had, after discovering the dangerous position in which decedent had negligently placed herself, to prevent her death? *Compare Andrews v. Wilkins*, 934 F.2d 1267, 1272–73 (D.C.Cir.1991) *with Johnson v. Washington Metro. Area Transit Auth.*, 883 F.2d 125, 129 (D.C.Cir.1989); and

(2) If the last clear chance doctrine requires that defendant's negligence placed the decedent in her position of peril, must the defendant's negligence have contributed to the decedent's initial peril or is it sufficient that the defendant's actions contributed to the decedent's danger once she had independently placed herself in a situation that was inherently life-threatening? In other words, for plaintiffs to satisfy their burden of establishing the first prong of the four part last clear chance test, *see* May 21, 1991 Memorandum, 764 F.Supp. at 1582, must they show that WMATA's negligence actually contributed to placing the decedent on the tracks in the first place or is it sufficient for the plaintiffs to show that the conductor's negligent operation of the train prevented him from stopping before striking the decedent, which would have arrested the peril in which the decedent had placed herself? *Compare Johnson,* 883 F.2d at 129 *with Drapaniotis v. Franklin,* 504 F.2d 236 (D.C.Cir.1974) *and Bowman v. Redding Co.,* 449 F.2d 956, 969–70 (D.C.Cir.1971).

Resolution of this apparent intra-circuit split would materially advance the ultimate termination of this litigation since an appellate decision on these issues might negate the need for a jury trial.