Eleanor T. JOHNSON, et al., Plaintiffs,

v.

WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY, Defendant.

Civ. A. No. 86–3110–LFO.

United States District Court,
District of Columbia.

Dec. 20, 1991.

David T. Smorodin, W. David Allen and
Allen T. Eaton, Eaton, McClellan and Allen,
Washington, D.C., for plaintiffs.

Fredric Howard Schuster, Bruce P. Heppen, Arnold Melnick, Robert L. Polk, Office
of Gen. Counsel, Washington Metropolitan
Transit Authority, Washington, D.C., for
defendant.

## MEMORANDUM

OBERDORFER, District Judge.

### I.

Plaintiffs' decedent died when she
jumped from a subway platform into the
path of an approaching WMATA train
which struck and killed her. On the theory
that undisputed evidence established that
the train was so close to decedent when she
jumped that no effort by an operator could
have avoided the fatal strike, this court
granted defendant's motion for summary
judgment despite evidence that the operator had tested positive for drug use. A
panel of the Court of Appeals reversed that
judgment and remanded the case. *Johnson v. Washington Metro. Area Transit
Auth.*, 883 F.2d 125 (D.C.Cir.1989) (Mikva,
R.B. Ginsburg and Hogan, JJ.), *cert. denied*, 494 U.S. 1027, 110 S.Ct. 1473, 108
L.Ed.2d 610 (1990). The panel ruled, *inter
alia*, that it was not necessary for a plaintiff to prove that defendant "ha[d] been
negligent before he discovered or should
have discovered the dangerous position in
which the plaintiff negligently put
h[er]self." *Id.* at 129. Instead, plaintiff
must only show that defendant "fail[ed] to
use, with the appropriate standard of care,
the ability which he then ha[d] to prevent
injury to the plaintiff." *Id.* The panel
invoked as its authority the District of Columbia Court of Appeals' decision in *Byrd*

*v. Hawkins,* 404 A.2d 941 (D.C.1979).[1] The panel determined, however, that it was the responsibility of the trial court, after an evidentiary hearing, to evaluate certain inconsistent testimony with respect to the position of the train when the decedent fell and that the grant of summary judgment had not included consideration of aspects of the testimony favorable to plaintiff. Having ruled that summary judgment was premature because there was a genuine issue of material fact as to whether the operator could have stopped the train in time, the panel directed attention to further genuine issues that would arise if the trial court resolved those issues by finding that the accident could have been avoided, including the "knotty question" of whether drug tests of the train operator were admissible, and whether statements of witnesses not employees of WMATA were admissible.

Pursuant to the remand order and the Court of Appeals' suggestions, this court authorized additional discovery and received briefs on defendant's renewed motion for summary judgment. A 33–page Memorandum filed May 22, 1991, 764 F.Supp. 1568, by this court provided for orders which would "deny defendant's second motion for summary judgment and schedule this matter for trial." *Id.* at 1570. An accompanying Order formally denied the renewed summary judgment motion and scheduled a status conference with a view to establishing a pretrial and trial schedule.

Meanwhile, on May 31, 1991, a Court of Appeals' panel filed its opinion in *Andrews v. Wilkins,* 934 F.2d 1267 (D.C.Cir.1991) (Mikva, D.H. Ginsburg and Sentelle, JJ.). In that case, police approached decedent and advised him that he was being charged with urinating in public. Decedent fled and in so doing leapt into the Washington Channel and began swimming to the oppo-

site shore. Decedent began to tire and appeared to be in danger of drowning. Defendants engaged in several unsuccessful attempts to rescue decedent. Discovering that decedent had become unconscious, a civilian in the boat prepared to enter the water to effect a rescue. The police directed the civilian not to enter the water, but instead to come to the shore to pick up a police officer. In the interim, decedent drowned; his body was recovered approximately one-half hour later. An autopsy revealed the presence of drugs and alcohol in decedent's bloodstream at the time of his death. In one paragraph and without citing *Johnson,* that panel rejected plaintiffs' common law tort claim on the authority of the federal Court of Appeals' post-reorganization ruling in *Queen v. Washington Metro. Area Transit Auth.,* 842 F.2d 476, 481 (D.C.Cir.1988).[2] It granted defendant's motion for summary judgment on the theory that a plaintiff who negligently placed himself in peril may prevail only by establishing that his peril was "caused by negligence of both plaintiff and defendant." *Andrews,* 934 F.2d at 1272. The Court found the *Andrews'* "decedent was in a position of danger by virtue only of his own actions." *Ibid.*

On June 6, 1991, defendant moved for reconsideration of the May 22 Order, apparently unaware of the *Andrews* decision. A June 13, 1991 Order denied that motion without awaiting a response from plaintiff because the motion "present[ed] no new legal authority and fail[ed] to point to any material evidence in the record not previously considered." Thereafter, instead of filing a further motion for reconsideration, defendant filed a "Motion to Certify Issue of Last Clear Chance under 29 [28] U.S.C. § 1292(b)" for the purpose of obtaining immediate review of the May 22, 1991 Order concerning the last clear chance doctrine.

---

**1.** The panel also cited as tangential authority prior decisions of the United States Court of Appeals rendered both before court reorganization when it was the highest court of the District of Columbia, and after the reorganization. *See* cases collected on page 1177, *infra.*

**2.** The *Andrews* panel quoted *Queen's* quotation from a 1982 opinion of the D.C. Court of Ap-

peals in *Washington Metro. Area Transit Auth. v. Jones,* 443 A.2d 45, 51 (D.C.1982) (which in turn quoted *Mathews v. Lindsay,* 281 F.2d 927, 928 (D.C.Cir.1960)) as the authoritative statement of the District of Columbia law under which a "plaintiff may make out a claim of negligence under the last clear chance doctrine."

Defendant's motion pointed to "the decision in *Andrews v. Wilkins* in which the Circuit Court held an essential element of the last clear chance doctrine under District of Columbia law is that plaintiff be placed in a position of danger by negligence of both plaintiff and [defendant]." Motion at 1 (citation omitted). Defendant argued that "[t]his is contrary to the holding of *Johnson v. WMATA* which held that antecedent negligence on the part of the defendant was not required." *Id.* (citation omitted).

A September 10, 1991 Memorandum and Order of this Court, 773 F.Supp. 459, addressed the issue of law of the case, granted WMATA's motion to certify and amended, but in effect ratified, the May 21, 1991 Memorandum and Order which had denied WMATA's renewed motion for summary judgment. The September 10 Memorandum in effect reaffirmed the May 21 Order which denied defendant's motion for summary judgment, noting, however, in support of certification that resolution of the apparent conflict between the panels would well serve the interest of justice by possibly avoiding the time and cost and, for the decedent's plaintiffs, trauma, of reviewing before a jury the details of the her tragic death.

Armed with this certification, WMATA petitioned the Court of Appeals for leave to file an interlocutory appeal. On November 4, 1991, a third Court of Appeals panel (Edwards, Silberman and Williams, JJ.) denied the petition for interlocutory appeal stating that

> Although the court recognizes the possibility of an intra-circuit split on the question presented in this case, we cannot address this matter absent a district court order resolving the questions certified to this court pursuant to 28 U.S.C. § 1292(b).... Should the district court enter a proper order, this court may then consider the merits of this matter.

*Johnson v. Washington Metro. Area Transit Auth.*, No. 91–8035, Order (D.C.Cir. Nov. 4, 1991).

In response to this suggestion, this court invited counsel for the parties to submit proposed orders. Defendant WMATA filed a proposed Memorandum and Order which substantially followed the contours of the September 10 Memorandum. Recognizing that, unlike appellate courts, district courts are required to follow the law of the case enunciated by a Court of Appeals panel, defendant's proposed order essentially asked the Court of Appeals to revisit its earlier holding in *Johnson* in light of *Andrews*. Plaintiffs countered with a proposed order that followed *Johnson* as the law of the case, implicitly challenging the district court's authority to certify a question to the Court of Appeals that has already been directly decided by a panel of that Court in an earlier proceeding of the same case.

■ The apparent disagreement between the *Johnson* panel's original remand order and the May 21 Order entered in compliance therewith on the one hand and the last clear chance doctrine as enunciated in *Andrews* frames "a controlling question of law as to which there is a substantial ground for difference of opinion." The May 21 Order, even as modified on September 10, denied instead of granting summary judgment; it is not appealable. However, interlocutory resolution of this controlling question "may materially advance the ultimate termination of this litigation." 28 U.S.C. § 1292(b). Therefore, an accompanying Order recertifies the question resolved in the earlier orders for such interlocutory consideration by the Court of Appeals as it may wish to give.

## II.

The Court of Appeals' November 4, 1991 Order declining defendant's prayer for certification apparently invites, if it does not require, a further exposition of the rationale of the May 21 Order denying defendant's motion for summary judgment as reiterated on September 10, and in the order accompanying this Memorandum. Briefly, those orders are based on the trial court's opinion that the *Johnson* opinion correctly interpreted the District of Columbia precedents. Furthermore, even if the *Andrews* decision were the more nearly correct statement of governing District of

Columbia law, this trial court would be bound by the law of the case as stated by the *Johnson* panel unless and until the entire Court of Appeals had at least informally approved a departure from that mandate. *See Irons v. Diamond,* 670 F.2d 265, 268 n. 11 (D.C.Cir.1981).

### A.

The District of Columbia is a contributory negligence jurisdiction. Therefore, decedent's negligence in jumping onto the tracks would bar recovery absent a showing that the train operator had the last clear chance to avoid striking her. There is District of Columbia precedent to the effect that to prevail despite contributory negligence by virtue of the last clear chance doctrine plaintiff must establish:

> (1) that plaintiff was in a position of danger caused by negligence of both plaintiff *and* defendant; (2) that plaintiff was oblivious of the danger or unable to extricate himself from the position of danger; (3) that defendant was aware or by the exercise of reasonable care should have been aware of plaintiff's danger and obliviousness or inability to extricate himself from the danger; and (4) that defendant with the means available to him was by the exercise of reasonable care able to avoid striking plaintiff after he became aware of the latter's danger and inability to extricate himself from danger, and failed to do so.

*Wash. Met. Area Transit Auth. v. Jones,* 443 A.2d 45, 51 (D.C.1982) (quoting *Mathews v. Lindsay,* 281 F.2d 927, 928 (D.C.Cir. 1960)) (emphasis added).

The *Johnson* panel, relying on the decision of the District of Columbia Court of Appeals in *Byrd v. Hawkins,* 404 A.2d 941 (D.C.App.1979)[3] (also citing *Drapaniotis v. Franklin,* 504 F.2d 236, 237–38 (D.C.Cir. 1974) (post-reorganization), *Bowman v. Redding & Co.,* 449 F.2d 956, 970 (D.C.Cir. 1971) (pre-reorganization)) ruled that, under District of Columbia law, the last clear chance doctrine does not require plaintiff to

establish that defendant negligently placed decedent in her position of peril in order to prevail. In the circumstances, detailed examination of those precedents seem to be in order.

In *Byrd,* a car driven by defendant struck plaintiff, a pedestrian, while he was crossing a street in a crosswalk. There was evidence that the accident occurred in the early morning hours, the traffic lights at the intersection were not operating, and plaintiff was wearing dark clothes. At trial, plaintiff claimed he only glanced at the oncoming traffic because he saw his three friends crossing in front of him; however, a woman walking immediately in front of plaintiff indicated that when she entered the crosswalk she saw headlights approximately 159 feet away. Defendant, who did not brake, swerve or sound his horn, claimed plaintiff bolted in front of his car before he had time to stop. The trial court refused plaintiff's request for an instruction on last clear chance and the jury rendered a verdict for the defendant. On appeal, plaintiff claimed that the evidence provided an adequate factual predicate for the last clear chance instruction. The D.C. Court of Appeals recited the same four point District of Columbia rule on last clear chance that reappeared in *Jones* and its progeny. Then it ruled that "there was evidence of negligence on the part of both parties" because "the jury was entitled to credit that [plaintiff] did not pay attention to oncoming traffic *and* that [defendant] should have been aware of [plaintiff's] presence in the crosswalk." *Byrd,* 404 A.2d at 942 (emphasis in original). Nevertheless, the Court of Appeals reversed and remanded the case for retrial in which the jury would be instructed that it could consider whether defendant should have been aware of plaintiff's presence in the crosswalk.

In *Bowman,* the Court of Appeals reversed the trial court's directed verdict for defendants in a wrongful death action, determining, among other things, that the

---

**3.** *Byrd* includes verbatim the full statement of the principles recited in *Washington Metro. Area Transit Auth. v. Jones* and may have been the seminal announcement of them in the District of Columbia.

court should have instructed the jury on the last clear chance doctrine despite the fact that one defendant was negligent, if at all, only after decedent was in peril. In brief, the decedent was assigned to work on the exterior window of a building under construction by the defendants. He apparently found his way into a space outside the 12th floor of the building between the wall of the building and a hoist which carried construction supplies up and down the exterior. While decedent was in this perilous position defendants caused the hoist to move possibly crushing decedent between the wall and the hoist and, in any event, caused him to fall 12 floors to the ground where he was pronounced dead. At trial, there was evidence that decedent had placed himself in a perilous position negligently. There was also evidence that the defendants had negligently failed to provide safeguards at the opening through which decedent entered the dangerous space and that they negligently moved the hoist either crushing decedent or causing him to fall.

Ruling that decedent was contributorily negligent as a matter of law, the trial judge directed a verdict for defendants. Although there was evidence that one of the defendants may have placed decedent in his position of danger, any possible negligence on the part of the other defendant—*i.e.*, causing the movement of the hoist—occurred after decedent was already in his perilous situation. Nevertheless, the Court of Appeals, reversing the trial court, held as to both defendants that the question of last clear chance was for the jury to decide:

> even assuming [decedent] was chargeable with having contributed to his plight through his own negligence, in the first instance, the doctrine of last clear chance permits recovery for the violation of the duty of care owed to him when he was seen between the ramp and the cage, a duty owed to him at that time regardless of any prior negligence. "Under the rule

of last clear chance it is what the defendant did or failed to do after plaintiff was imperiled that constitutes the breach of duty for which the defendant is held liable."

*Bowman,* 449 F.2d at 962 (citation omitted).

The defendant whose negligence occurred after decedent was in his position of peril petitioned for a rehearing. After a thorough analysis of the law in the District of Columbia and other authority, Judge Leventhal in a supplemental opinion concluded:

> The rule is that under the last clear chance doctrine ... defendant is liable for failure to exercise reasonable care in avoiding a harm to which plaintiff exposed himself, and defendant's liability is not dependent on a showing of negligence on the part of defendant prior to the time he discovered or should have discovered plaintiff's peril.

*Id.* at 970.

In *Drapaniotis,* plaintiff, a pedestrian, was struck by an automobile while negligently crossing a street in the middle of a block, in violation of the Motor Vehicle Regulations for the District of Columbia. Determining that the jury could also have found that the driver was negligent in violating "the same Regulations in not exercising 'due care to avoid colliding with any pedestrian' and in failing to 'give warning by sounding the horn,' " the U.S. Court of Appeals reversed the trial court's directed verdict for the defendant. According to that appellate court, "[a]lthough there have been many formulations of the [last clear chance] doctrine, where a [person] is in a position of peril, even by reason of his own negligence, of which he is unaware or unable to extricate himself, then an obligation arises on the part of the driver ... to avoid striking him if the driver can do so by the exercise of reasonable care." *Id.,* 504 F.2d at 237–38.[4]

---

**4.** In an earlier decision not cited by the *Johnson* panel but supportive of its theory, the United States Court of Appeals, acting as the highest court for the District of Columbia also adopted the same construction of District law stating that:

> Under the rule of last clear chance it is what the defendant did or failed to do after the

### B.

On the other hand, the opinion of the *Andrews* panel relies on a single U.S. Court of Appeals' decision, *Queen*, 842 F.2d at 481, that, quoting a D.C. Court of Appeals' decision, *Jones*, 443 A.2d at 51, simply restates the first element of the D.C. construction of the last clear chance doctrine—*i.e.*, that a claim of negligence under the doctrine requires a showing "that plaintiff was in a position of danger caused by negligence of both plaintiff and defendant." *Andrews*, 934 F.2d at 1272. Neither *Queen* nor *Jones* decided the question of whether defendant's negligence must initially have placed the decedent in her position of peril. In fact, the *Queen* panel specifically "put[ ] to one side the first, third, and fourth requirements" of the last clear chance doctrine because the plaintiff "patently r[an] afoul of the second prong of this test." 842 F.2d at 481.

In *Queen*, the plaintiff was running alongside a bus as it moved out of a bus stop, yelling and pounding on its side in an effort to attract the driver's attention. He fell or was knocked beneath the wheels of the bus which ran over his legs. The bus was "articulated," i.e. a front section was separated from the back section and was longer than the conventional single section bus. As a result, plaintiff claimed, the rear section swung closer to the curb than a conventional bus would, so that an attentive driver would have heard and seen plaintiff, and knowing that he was in peril from the probable course of the second "section," could have stopped the bus, or otherwise avoided the accident. After trial, the District Court refused plaintiff's request for a last clear chance instruction. The jury returned a verdict for defendant and plaintiff appealed. A Court of Appeals panel (*Wald*, Starr and MacKinnon, JJ) affirmed the judgment on the verdict. After reciting the four point predicate for a last clear chance instruction as stated in *Jones*, the *Queen* panel put aside the first, third and fourth requirement and disposed of plaintiff's request because he failed to es-

tablish that he was oblivious of the danger he was in or that he was unable to extricate himself. *Queen*, 842 F.2d at 481. In fact the panel noted:

> Queen makes no argument, and no evidence ... suggests that Queen, mobile and standing on an open street, was unable to extricate himself at any point in time by stopping running and by moving his arm fully into the vertical plane of the sidewalk.

*Queen*, 842 F.2d at 481. Thus, the *Queen* panel never reached the question resolved in *Johnson* and *Andrews* as to whether the defendant's negligence as well as plaintiff's must create plaintiff's peril before the last clear chance doctrine comes into play.

The *Jones* case cited in *Andrews* and *Queen* involved a collision at an intersection between an automobile and a bus. The street on which the automobile was travelling was controlled by a stop sign at the intersection; there was no sign or other signal controlling the approach to the intersection on which the bus was travelling. The speed of the bus and whether the automobile stopped at the stop sign were in dispute. In response to a special verdict interrogatory, the jury found that WMATA and its driver had the last clear chance to avoid the accident and a verdict for plaintiff. Defendant appealed. The D.C. Court of Appeals held that it was unnecessary to decide whether or not the automobile stopped at the sign because "[e]ven if we hold that [the driver of the automobile] was contributorily negligent as a matter of law for failing to look effectively before passing the stop sign, the negligence does not bar her right to recover where the bus driver had a last clear chance to avoid the accident." *Jones*, 443 A.2d at 51. The Court, however, did not identify the position of danger. The *Jones* panel also recited the four D.C. predicates for a last clear chance instruction (*id.* at 51), but noted that the trial court had included in his instruction a caveat that the last clear chance doctrine

---

plaintiff was imperiled that constitutes the breach of duty for which the defendant is held liable.

*Landfair v. Capital Transit Co.*, 165 F.2d 255, 256–57 (D.C.Cir.1948) (quoted in *Bowman v. Redding & Co.*, 449 F.2d at 970).

... is not applicable if the time lapse between the discovery of the plaintiff's peril and the collision was not sufficient for the defendant to avoid the collision, for the defendant is not required to act instantaneously.

Whereupon the *Jones* panel determined that there was evidence that would have permitted the jury to find that the bus driver was far enough away from the intersection to have avoided the accident by slowing, veering or sounding a horn. There was no discussion of the issue on which the *Johnson* and *Andrews* panel may have parted company, *i.e.* whether the defendant's negligence along with plaintiff's caused the plaintiff's original peril.

It seems apparent that the cases cited by the *Andrews* panel, as well as those cited in *Johnson*, tend to support the latter decision that even if the plaintiff's negligence, but not the defendant's negligence, originally placed plaintiff in a position of peril, there can remain an issue, such as that now pending in *Johnson* as to whether, after plaintiff was in such a position, defendant "failed to use, with the appropriate standard of care, the ability which he then ha[d] to prevent injury to the plaintiff." *Johnson*, 883 F.2d at 125. This analysis leads to the ruling reflected in the orders of May 21, September 10 and today that defendant's motion for summary judgment should be denied.

## C.

 In any event, the law of the case doctrine requires the trial court to follow the *Johnson* panel's mandate. In its proposed order, WMATA identified decisions where in limited circumstances one panel of the Court of Appeals did not follow an earlier ruling in the case by another panel. *See Safir v. Dole,* 718 F.2d 475, 480 (D.C.Cir.1983), *cert. denied,* 467 U.S. 1206, 104 S.Ct. 2389, 81 L.Ed.2d 347 (1984), *Irons v. Diamond, supra, Melong v. Micronesian Claims Com'n,* 643 F.2d 10, 17 (D.C.Cir.1980) (quoting *White v. Murtha,* 377 F.2d 428, 432 (5th Cir.1967)). Apparently none of these decisions cited by WMATA reviewed the action of a trial court which decided not to follow a Court of Appeals' ruling in a particular case. Indeed, even a Court of Appeals panel evidently must follow the law of the Circuit as established by another panel, unless and until its new version of that law has at least been reviewed informally by the full court. *Irons,* 670 F.2d at 268 n. 11. A trial court's failure to follow a direct order of an appellate court could lead to mischief and become disruptive of the orderly function of the federal judicial system. *See, e.g., Intern. Ladies Garment Workers' Union v. Donovan,* 733 F.2d 920, 922–23 (D.C.Cir.1984). There also comes to mind the experience of the Court of Appeals for the Fifth Circuit in the 1960's when one judge of that Court repeatedly stayed the orders of a panel of that court until the Circuit Justice was forced to intervene. *See Meredith v. Fair,* 306 F.2d 374, 376 (5th Cir.1962). Moreover, a trial court's decision in a case like this one could not, absent further appellate action, effectively "clarify the controlling law in this Circuit." *See Irons,* 670 F.2d at 268.

\* \* \* \* \* \*

Despite the identical outcomes under both the case law and the law of the case, certification is warranted in this case. There is a possible intracircuit split on the issue. Even absent this split the case law is confused. Moreover, if the *Andrews* holding is the prevailing rule in the District of Columbia, a trial in this matter, with its concomitant expense to the parties, both financial and emotional, can be avoided. Therefore, I will certify this question to the Court of Appeals.

An accompanying Order will again deny defendant's motion for summary judgment, certify the controlling question of law stated in the order, stay all proceedings at this level and schedule a status call for January 15, 1992, unless by that date defendant notifies this Court as to whether it has filed or renewed its petition to the Court of Appeals for leave to file an interlocutory appeal to resolve the questions here certified.

## ORDER

For reasons stated in an accompanying Memorandum, it is this —— day of December, 1991, hereby

ORDERED: that defendant's motions for summary judgment are again DENIED; and it is further

ORDERED: that defendant's motion for certification to the Court of Appeals pursuant to 28 U.S.C. § 1292(b) is GRANTED; and it is further

ORDERED: that the May 21, 1991 Order and Memorandum is amended to state:

The Court of Appeals' decision in *Andrews v. Wilkins*, 934 F.2d 1267 (D.C.Cir. 1991), may be inconsistent with the earlier decision of another panel of that Court in this case, *Johnson v. Washington Metro. Area Transit Auth.*, 883 F.2d 125 (D.C.Cir. 1989). Accordingly, the following questions are certified for interlocutory review:

1. Does the last clear chance doctrine, as it is applied in the District of Columbia, require plaintiffs to show that defendant's negligence placed the decedent in her position of peril or only that defendant acted negligently in failing to use, with the appropriate standard of care, the ability which he had, after discovering the dangerous position in which decedent had negligently placed herself, to prevent her death? *Compare Andrews*, 934 F.2d at 1272 with *Johnson*, 883 F.2d at 129; and

2. If the last clear chance doctrine requires that defendant's negligence placed the decedent in her position of peril, must the defendant's negligence have contributed to the decedent's initial peril or is it sufficient that the defendant's actions contributed to the decedent's danger once she had independently placed herself in a situation that was inherently life threatening? In other words, for plaintiffs to satisfy their burden of establishing the first prong of the four-part last clear chance test, *see* May 21, 1991 Memorandum at 31, must they show that WMATA's negligence actually contributed to placing the defendant on the tracks in the first place or is it sufficient for the plaintiffs to show that the conductor's negligent operation of the train prevented him from stopping before striking the decedent, which would have arrested the peril in which the decedent had placed herself? *Compare Johnson*, 883 F.2d at 129 *with Andrews*, 934 F.2d at 1272, *Phillips v. D.C. Transit System, Inc.*, 198 A.2d 740, 741 (D.C.1964) and *Heinecke v. Western Union Telegraph Co.*, 156 A.2d 143, 144–45 (D.C.1959).

And it is further

DECLARED: that the foregoing are controlling questions of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of this litigation; and it is further

ORDERED: that further trial court proceedings at this level are STAYED, subject to further orders of this Court; and it is further

ORDERED: that counsel shall attend a status call at 9:30 a.m. on January 15, 1992, unless prior to that date defendant advises this Court that it has filed or renewed a petition to the Court of Appeals for leave to file an interlocutory appeal to resolve the questions here certified.