Edward S. IRONS, Appellant,

v.

Sidney A. DIAMOND, Commissioner of Patents.

Edward S. IRONS, Appellant,

v.

Sidney A. DIAMOND, Commissioner of Patents.

Nos. 80–2015, 81–2159.

United States Court of Appeals, District of Columbia Circuit.

Argued May 26, 1981.

Decided Dec. 18, 1981.

See also, 606 F.2d 1215.

Mary Helen Sears, Washington, D. C., for appellant.

R. Craig Lawrence, Asst. U. S. Atty., Washington, D. C., with whom Charles F. C. Ruff, U. S. Atty., Royce C. Lamberth and Kenneth M. Raisler, Asst. U. S. Attys., and Joseph S. Nakamura, Sol., U. S. Office of Patents and Trademarks, Washington, D. C., were on the brief for appellee.

Before MacKINNON, MIKVA and GINS-BURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge MacKINNON.

MacKINNON, Circuit Judge:

This is "Round IV" of appellant's ten-year fight to secure access under the Freedom of Information Act (FOIA) to the unpublished manuscript decisions of the Patent and Trademark Office (PTO).[1] In the order presently under review, the district court ordered the PTO to produce, from

---

1. *Irons v. Diamond,* C.A. No.75–70 (D.D.C. July 31, 1980), *reprinted in* Appendix (App.) at 58–60; *Irons & Sears v. Dann,* 606 F.2d 1215 (D.C.Cir.1979), *cert. denied,* 444 U.S. 1075, 100 S.Ct. 1021, 62 L.Ed.2d 757 (1980); *Irons v. Gottschalk,* 548 F.2d 992 (D.C. Cir.1976), *cert. denied,* 434 U.S. 965, 98 S.Ct. 505, 54 L.Ed.2d 451 (1977), *aff'g in part and* *rev'g in part,* 369 F.Supp. 403 (D.D.C.1974); *Irons v. Schuyler,* 465 F.2d 608 (D.C.Cir.) *cert. denied,* 409 U.S. 1076, 93 S.Ct. 682, 34 L.Ed.2d 664 (1972), *aff'd and remand'g,* 321 F.Supp. 628 (D.D.C.1970); *see also Sears v. Gottschalk,* 502 F.2d 122 (4th Cir. 1974), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1494, 47 L.Ed.2d 753 (1976).

approximately 175 bound volumes of decisions covering the years 1853–1954, all unpublished manuscript decisions relating to granted patent applications upon the prepayment of a reasonable search fee of an undetermined amount. The district court also dismissed the remainder of appellant's second amended complaint. We affirm in part, reverse in part, and remand for further proceedings.

I

■ Appellant argues initially that the district court disregarded this court's mandate in *Irons v. Gottschalk* (*Irons II*)[2] when it ordered the PTO to produce from the 175 bound volumes only those unpublished decisions relating to granted patent applications. Appellant contends that *Irons II* also entitles him, after the "detailed information and salient knowledge pertaining to the patent applications" has been deleted therefrom, to the unpublished decisions relating to pending or abandoned patent applications.[3] Although appellant recognizes that *Irons & Sears v. Dann*[4] holds that decisions relating to pending or abandoned patent applications are exempt in their entirety, he asserts that the district court's reliance upon *Dann* was foreclosed by the doctrine of the law of the case.

We agree that *Irons II* and *Dann* are irreconcilable in this respect. Both decisions addressed the interrelationship of 35 U.S.C. § 122 and exemption three of FOIA.[5] Section 122 provides:[6]

Applications for patents shall be kept in confidence by the Patent and Trademark Office and *no information concerning the same* given without authority of the applicant or owner unless necessary to carry out the provisions of any Act of Congress or in such special circumstances as may be determined by the Commissioner.

*Irons II* concluded that the "information concerning" clause of section 122 did not exempt pending and abandoned application decisions in their entirety, but only the "detailed information and salient knowledge pertaining to the patent applications" contained in those decisions.[7] *Dann* found the pending and abandoned application decisions exempt in their entirety,[8] specifically rejecting the contention that the decisions could be made available after deletion of certain matter considered to be excisable

Congress seems to have intended to draw a bright line shielding from disclosure *all* information concerning patent applications. Had it wanted to insulate only some information concerning them, or

**2.** *Irons v. Gottschalk, supra* n.1.

**3.** For definitions of the various forms of patent applications, *see Irons & Sears v. Dann, supra* n.1, 606 F.2d at 1218; *Sears v. Gottschalk, supra* n.1, 502 F.2d at 124.

**4.** *Irons & Sears v. Dann, supra* n.1.

**5.** Exemption three excludes from the reach of FOIA those matters that are

specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld[.]

5 U.S.C. § 552(b)(3).

**6.** 35 U.S.C. § 122 (emphasis added).

**7.** *Irons v. Gottschalk, supra* n.1, 548 F.2d at 996, 997. We held:

*Vaughn* [*v. Rosen*, 484 F.2d 820 (D.C.Cir. 1973) ] stated that "an entire document is not exempt merely because an isolated portion need not be disclosed." *Vaughn, supra*, p. 825. We believe that this principle applies to the manuscript *decisions* before us today. Those portions of the *decisions* which contain protected information can be excised in order that the non-exempt portions can be disclosed.

\*   \*   \*   \*   \*   \*

. . . 35 U.S.C. § 122 does not exempt either the requested manuscript *decisions* or the requested volumes *in toto*, but rather exempts only portions of the requested material containing detailed information and salient knowledge pertaining to the patent applications . . . .

We further suggested that a "special master might make determinations as to whether certain portions of manuscript decisions are exempt or non-exempt." *Id.* at 997.

**8.** *Irons & Sears v. Dann, supra* n.1, 606 F.2d at 1221–1222.

otherwise to inaugurate a regime of selective excision, it could easily have so specified. Instead, it enacted a flat prohibition on disclosure which we do not feel free to ignore. Accordingly, we conclude that the documents in suit are exempt *in toto* insofar as they relate to pending or abandoned patent applications.[9]

Having acknowledged this fundamental inconsistency between *Irons II* and *Dann*,[10] we decline to resolve it through application of the law of the case doctrine. While this path would lead us out of the present thicket, it would do little if anything to cut away the tangled legal underbrush and clarify the controlling law in this circuit. Upon further reflection, we find persuasive the reasoning in *Dann* that 35 U.S.C. § 122 unambiguously provides that applications for patents shall be kept in confidence by the PTO, and that no information concerning the same shall be disclosed. This brings such information within Exemption 3. Accordingly, we reject *Irons II* to the extent it holds or intimates to the contrary.[11] Because the district court correctly applied *Dann* to the circumstances of this case, we affirm its order in this respect.

## II

As noted above, the district court ordered the PTO to produce the granted application decisions contained in the 175 bound volumes only upon prepayment of a reasonable search fee of an undetermined amount. Appellant vigorously argues that the district court erred in so doing. He points out that he seeks only "final opinions . . . made in the adjudication of cases" within the meaning of 5 U.S.C. § 552(a)(2)(A),[12] opinions which section

9. *Id.* at 1222 (emphasis in original).

10. The decisions sought in *Dann* were "earlier filing date decisions", that is, decisions concerning whether the filing date given a patent application by the PTO should be moved up. *Id.* at 1217–1218. The decisions sought in this litigation apparently cover a wide range of topics. While it might therefore be possible to reconcile *Irons II* and *Dann* by limiting the rule in *Dann* to earlier filing date decisions, we would thereby create the proverbial "distinction without a difference," since the parties agree that unpublished earlier filing date decisions pertaining to pending and abandoned applications are merely a subclass of unpublished decisions pertaining to pending and abandoned applications generally. Furthermore, it would be extremely anomalous to apply a narrower rule to the subclass than to the class as a whole.

    *Dann* attempted to distinguish *Irons II* on the grounds that while the decisions in *Irons II* were only partially exempt, the earlier filing date decisions were exempt in their entirety. *Id.* at 122 n.31. This reasoning, however, fails to identify any basis for distinguishing between the two categories of decisions. In light of our inability to discover any such distinction, we prefer to eschew this approach and address the conflict between the cases squarely.

    Appellant also contends that *Irons II* and *Dann* are inconsistent in their treatment of 35 U.S.C. § 122 as an exemption three statute. This assertion is without merit. In *Irons II*, we applied section 122 as an exemption three statute, *see Irons v. Gottschalk, supra* n.1, 548 F.2d at 994–997, and ventured in dicta that its status as such remained unaffected by the 1976 amendments which narrowed the scope of exemption three, *id.* at 994 n.3. In *Dann*, we explicitly held that section 122 was an exemption three statute under the exemption's amended language. *Irons & Sears v. Dann, supra* n.1, 606 F.2d at 1220–1221. The two decisions are thus completely consistent in this respect, and we continue to adhere to their conclusion that section 122 is indeed an exemption three.

11. The foregoing part of the division's decision, because it resolves an apparent conflict between two prior decisions, has been separately considered and approved by the full court, and thus constitutes the law of the circuit.

12. Section 552(a)(2)(A) provides:

    (2) Each agency, in accordance with published rules, shall make available for public inspection and copying—

    (A) final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases . . .

unless the materials are promptly published and copies offered for sale. . . . Each agency shall also maintain and make available for public inspection and copying current indexes providing identifying information for the public as to any matter issued, adopted or promulgated after July 4, 1967, and required by this paragraph to be made available or published. . . . A final order, opinion, statement of policy, interpretation or staff manual or instruction that affects a member of the public may be relied on, used or cited as

552(a)(2)(A) requires the PTO to "make available for public inspection and copying". Appellant asserts that since section 552(a)(2)(A) requires the PTO to make such opinions available to the public, the PTO may not condition its compliance with the mandate of the statute upon a member of the public reimbursing the PTO for its costs of doing so.

We are presently unable to address this argument. First, we have some difficulty with the suggestion that Congress intended section 552(a)(2)(A), enacted in 1967, to apply to final opinions which were rendered as long ago as 1853, more than one hundred years before the statute was passed. To so hold would be to conclude that Congress intended to require every federal agency to determine which of its decisions handed down during the decades preceding 1967 constituted a "final opinion" and to make those that did available to the public. We hesitate to impose such a herculean task upon the federal bureaucracy in the absence of a clear manifestation of congressional intent.[13] However, since this issue was not addressed by either the parties or the dis-

trict court, we think it inappropriate to resolve it ourselves in the first instance. Second, the district court did not address the question of which manuscript decisions constitute "final opinions" for purposes of § 552(a)(2)(A).[14] We repeat our earlier direction in *Irons II*[15] that the district court rule on this issue and offer again the suggestion that a special master might be used for this purpose if the task proves too time-consuming. We continue to lack a sufficiently detailed and focused record to make such a determination and consider it essential for the district court to determine the nature and content of the PTO's manuscript decisions as promptly as possible. We accordingly reverse the district court's order to the extent it requires prepayment of a search fee at this time, and remand the case for resolution of the following issues:

1) Does section 552(a)(2)(A) require the PTO to "make available for public inspection and copying those "final opinions ... made in the adjudication of cases" which were decided before the enactment of FOIA on July 4, 1967?

precedent by an agency against a party other than an agency only if—
(i) it has been indexed and either made available or published as provided by this paragraph; or
(ii) the party has actual and timely notice of the terms thereof.
5 U.S.C. § 552(a)(2)(A).

**13.** Whether Congress so intended, of course, is a question of statutory interpretation to be resolved by reference to the language of the statute, its legislative history, and the canons of statutory construction. It also involves, however, consideration of the extent to which it is reasonable to conclude that Congress intended the Act to apply retroactively in such sweeping fashion. Legislation is generally intended to apply *in futuro*, and to govern events that occur in the future.

We find some support for a purely prospective application of the requirements of section 552(a)(2)(A) in the language stating that "final opinions ... made in the adjudication of cases" shall be made available to the public unless they are "*promptly* published and copies offered for sale." 5 U.S.C. § 552(a)(2)(A) (emphasis added). Because opinions can be "promptly published" only if they are published soon after they are handed down, this language implies that Congress intended the provision to apply to decisions rendered after pas-

sage of the Act, and not to those rendered in 1853. Further support for this view is found in the language expressly limiting the requirement for indices only "to any matter issued, adopted, or promulgated after July 4, 1967, and required by this paragraph to be made available or published." 5 U.S.C. § 552(a)(2). It may be, however, that a congressional intent to have the Act apply retroactively for a reasonable period of time, or to decisions rendered before 1967 but upon which the agency continues to rely as precedent, may be inferred. It is also possible that the Act may afford the PTO an election with respect to final opinions rendered prior to 1967; that is, to make them available to the public or to simply deny them all precedential force or significance. *See* 5 U.S.C. § 552(a)(2) ("A final ... opinion ... that affects a member of the public may be relied on, used, or cited as precedent by an agency against a party other than an agency only if—(i) it has been indexed and either made available or published as provided by this paragraph; or (ii) the party has actual and timely notice of the terms thereof.").

**14.** *See Irons v. Diamond, supra* n.1, at 2, App. at 59.

**15.** *Irons v. Gottschalk, supra* n.1, 548 F.2d at 997.

2) If issue 1 is answered in the affirmative, which decisions qualify?

3) If issue 1 is answered in the affirmative, does 5 U.S.C. § 552(a)(4)(A) authorize an agency to charge a search fee to cover the costs of making those final opinions available to the public?

4) If a search fee is authorized should the fee be waived or reduced in the public interest because furnishing the documents can be considered as primarily benefiting the general public under 5 U.S.C. § 552(a)(4)(A)?

We view issue (3) as a matter that is not entirely free from doubt. There is appeal to the argument that when Congress ordered agencies to make their final opinions available to the public, it did not envision that the agencies would pass along the costs of doing so to an individual member of the public. In addition, the legislative history of section 552(a)(4)(A) appears to limit its reach to records disclosed under section 552(a)(3), that is, to matters which members of the public can obtain only on request and which have not already been published in the Federal Register under section 552(a)(1) or made available to the public under sections 552(a)(1) and (a)(2). See H.R.Rep.No. 1380, supra n.16; S.Rep.No.854, supra n.16.

The language of section 552(a)(4)(A), however, can be read in a contrary fashion.[16] If the district court answering issue (1) rules against retroactivity, payment of a search fee would clearly be in order. Appellant would then not be seeking "final opinions ... made in the adjudication of cases" within the meaning of section 552(a)(2)(A), but rather would be requesting agency "records" under section 552(a)(3). A search fee for such records, as appellant does not contest, is clearly authorized by 5

U.S.C. § 554(a)(4)(A). The fees authorized thereby are intended "to carry out the provisions of this *section*" and the term "section" would appear to refer to section 552 as a whole, which would include section 552(a)(2)(A). Furthermore, section 552(a) (4)(A) authorizes the charging of a fee for "documents," a term which is undefined by the Act but which would appear broad enough to encompass both "records" and "final opinions", particularly those of ancient vintage. K. Davis, Administrative Law, § 5:4 at 315, § 5:20 at 368 (1978). We intimate no view on the outcome of this question, however, but leave it for determination by the district court.

We note an additional argument raised by the government. The government contends that even if a search fee may normally not be charged for making final opinions available to the public, a search fee may be charged in this case because all the decisions sought may be found in their individual patent files, which may be procured upon request by a member of the public from the PTO search room. The government argues that the presence of these decisions in their relevant patent files constitutes compliance with the mandate of section 552(a)(2)(A) that final opinions be made available to the public, and concludes that the PTO may therefore charge appellant the costs of providing these same decisions in an alternate form.

We again refrain from ruling on these contentions, for appellant disputes either their veracity or validity and we lack a sufficiently detailed record addressed thereto. First, appellant asserts that most if not all of the decisions at issue are not contained in the patent files. In addition, he claims that securing the decisions from the patent files, which allegedly involves re-

---

**16.** 5 U.S.C. § 552(a)(4)(A) provides:

In order to carry out the provisions of this section, each agency shall promulgate regulations, pursuant to notice and receipt of public comment, specifying a uniform schedule of fees applicable to all constituent units of such agency. Such fees shall be limited to reasonable standard charges for document search and duplication and provide for recovery of only the direct costs of such search

and duplication. Documents shall be furnished without charge or at a reduced charge where the agency determines that waiver or reduction of the fee is in the public interest because furnishing the information can be considered as primarily benefiting the general public.

See H.R.Rep.No.1380, 93d Cong., 2d Sess. 7 (1974); S.Rep.No.854, 93d Cong., 2d Sess. 10–12 (1974).

questing each individual file from the PTO search room and then awaiting its delivery several days later from a federal records center located miles away, is such a cumbersome procedure that the decisions cannot truly be said to be "available" within the meaning of section 552(a)(2)(A).

These arguments, of course, need only be addressed if the district court determines that section 552(a)(2)(A) applies to decisions rendered before the passage of FOIA. If the issues are reached, however, the parties should develop a factual record indicating which of the decisions are available in the patent files, and the nature of the process by which a member of the public may procure them from the search room. Bearing in mind our previous observations that "locating the kinds of decisions appellant seeks in public patent files [may] be so great a burden as to make their availability all but meaningless," *Irons & Sears v. Dann, supra* n.1, 606 F.2d at 1222 n.37, the district court should then rule on whether this procedure comports with the requirement that final opinions be made "available for public inspection and copying", 5 U.S.C. § 552(a)(2)(A). Pertinent to this inquiry would appear to be the regulation governing the PTO which requires all final opinions to be made available to the public in the central public reference facility of the Secretary of Commerce, *see* C.F.R. § 4.5(a)(1) ("The Assistant Secretary for Administration has established and maintains a central public reference facility . . . at which place the following materials . . . shall be made available for public inspection and copying: (1) Final opinions . . . made in the adjudication of cases. . . .").

If section 552(a)(2)(A) applies to these decisions, if the aforementioned procedure comports with that section's availability requirement, and if the decisions are indeed to be found in the patent files, we see no reason why a search fee may not be charged to make them available in a form not required by that section, regardless of whether a search fee may or may not be charged to cover the costs of an agency's compliance with the mandate of section 552(a)(2)(A). If the procedure does not satisfy section 552(a)(2)(A)'s availability requirement, the presence or absence of the decisions in the patent files would be irrelevant to the fee determination issue. Should these issues be reached, genuine co-operation between the parties on the underlying factual matters involved, whether through the use of admissions under F.R.C.P. 36 or stipulations of fact, would greatly ease the burdens imposed upon the district court, and upon this court during any subsequent appeal.

If the district court determines a search fee may be charged, the issue of its amount must then be addressed. In the order under review, the district court did not specify the amount it considered to be a reasonable search fee. Rather, it directed the PTO to present affidavits and other materials to document the man-hours required to locate the decisions, and provided appellant with an opportunity to respond thereto. *Irons v. Diamond, supra* n.1, at 3, App. at 60. We find this a fair and appropriate procedure to be used.

### III

■ Appellant finally urges that the district court erred in dismissing the balance of his second amended complaint. As we read the district court's order, it 1) dismissed the demand for unpublished manuscript decisions issued after the passage of FOIA in 1967 on the grounds that the PTO is already meeting the requirements of section 552(a)(2)(A) with respect to them—that is, they are adequately indexed and are available in their relevant patent files; 2) dismissed the demand for other unpublished manuscript decisions, which the complaint described in a variety of ways in terms of both content and date of decision, on the grounds that they had not been identified with adequate specificity; and 3) dismissed the remainder of the general relief sought

by paragraphs (b)–(d) of the complaint [17] on the grounds that such relief had already been denied by the district court and the denial affirmed by this court in *Irons II*.[18]

We agree that the district court properly dismissed the relief requested by paragraphs (b)–(d) of the Complaint. With respect to the request for the post-1967 decisions, however, we find the record insufficient to support the conclusion that the mere presence of a decision in its patent file satisfies the requirements of section 552(a)(2)(A).[19] We accordingly remand for further consideration of this issue. Finally, we reverse the ruling that the request for the other unpublished manuscript decisions lacked the requisite specificity. Although we agree that the second amended complaint is not a model of specificity, Justice Clark's opinion for the court in *Irons II* found it to be sufficiently specific.[20] We recognize, however, the difficulty posed in this respect. If appellant secures further identifying information, whether from the PTO or elsewhere, he should make the request more specific.

*Judgment accordingly.*

---

**17.** *See* Second Amended Complaint, App. at 22.

**18.** *Irons v. Diamond, supra* n.1, at 2–3, App. at 59–60.

**19.** *See Irons & Sears v. Dann, supra* n.1, 606 F.2d at 1222 n.37.

**20.** *Irons v. Gottschalk, supra* n.1, 548 F.2d at 996, 997 ("The appellant has made as specific a request as possible for the 175 volumes *and other manuscript decisions.*") (emphasis added). The PTO has not defended, either in its brief or at oral argument, the district court's dismissal of the second amended complaint on specificity grounds.