# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued February 20, 2024        Decided October 8, 2024

No. 23-7040

CAMPAIGN LEGAL CENTER,
APPELLANT

v.

45COMMITTEE, INC.,
APPELLEE

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:22-cv-01115)

---

*Molly E. Danahy* argued the cause for appellant. With her on the briefs were *Adav Noti*, *Kevin P. Hancock, Alexandra Copper*, and *Allison Walter*.

*Brinton Lucas* argued the cause for appellee. With him on the brief were *Brett A. Shumate*, *E. Stewart Crosland*, and *Charles E.T. Roberts*.

*Brett R. Nolan* was on the brief for *amicus curiae* Institute for Free Speech in support of appellee.

Before: SRINIVASAN, *Chief Judge*, CHILDS, *Circuit Judge*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Chief Judge* SRINIVASAN.

SRINIVASAN, *Chief Judge*: In 2018, Campaign Legal Center filed an administrative complaint with the Federal Election Commission. The complaint alleged that 45Committee, Inc., had violated the Federal Election Campaign Act by failing to register as a political committee. Almost two years went by and the Commission took no discernible action on the complaint. Campaign Legal Center then sued the Commission, seeking a declaration that the Commission's failure to act on the complaint was "contrary to law." 52 U.S.C. § 30109(a)(8). The court agreed and granted that relief.

Under the Federal Election Campaign Act, if the Commission failed to "conform with" that contrary-to-law declaration within thirty days, Campaign Legal Center could bring a citizen suit against 45Committee to try to enforce the allegations in the administrative complaint. *Id.* § 30109(a)(8)(C). Thirty days came and went with no apparent action from the Commission. The court that issued the contrary-to-law decision then entered an order finding that the Commission had failed to conform, clearing the way for Campaign Legal Center to bring this citizen suit.

Shortly after the initiation of the suit, however, it came to light that the Commission in fact had taken a previously unknown action in the thirty-day period following the court's contrary-to-law determination. Specifically, the Commission had held a vote on whether to investigate the allegations in Campaign Legal Center's administrative complaint. The vote failed, so no Commission investigation ensued.

After learning that the Commission had held that vote in the thirty-day window following the contrary-to-law determination, the district court dismissed this citizen suit. The court reasoned that, by holding the vote, the Commission had conformed with the determination that its prior inaction was contrary to law, and that conformance precluded the bringing of a citizen suit.

Campaign Legal Center now appeals. It argues that the district court should not have second-guessed the previous determination that the Commission had failed to conform with the contrary-to-law determination. And it further argues that, regardless, the Commission's unsuccessful vote on whether to initiate an investigation did not amount to an action that conformed with the contrary-to-law determination and that thereby foreclosed this citizen suit.

We disagree on both scores. We conclude that, after learning of the previously unknown vote held by the Commission, the district court was free to consider afresh whether the Commission had conformed with the contrary-to-law determination. We further conclude that the Commission's holding of the vote did constitute conformance with the contrary-to-law determination so as to preclude this citizen suit.

I.

A.

1.

Congress established the Federal Election Commission to "administer, seek to obtain compliance with, and formulate policy with respect to" the Federal Election Campaign Act (FECA). 52 U.S.C. § 30106(a), (b)(1). The Commission

comprises six voting members, no more than three of whom "may be affiliated with the same political party." *Id*. § 30106(a)(1).

The Commission has "exclusive jurisdiction with respect to civil enforcement" of FECA. *Id.* § 30106(b)(1). Any "decision[] of the Commission" to "exercise [] its duties and powers" must, at minimum, "be made by a majority vote of" Commissioners, *id*. § 30106(c), which can be as few as three given that four Commissioners can make up a quorum. Fed. Election Comm'n, Commission Directive No. 10 at 1 (June 8, 1978, amended Dec. 20, 2007), https://perma.cc/7ZMK-TYWS. FECA imposes a higher bar for the Commission to wield investigatory or enforcement powers: four or more votes—a bipartisan majority of the Commission—are required to initiate an investigation into violations of FECA or to authorize any enforcement measures against a violator. *See id*. § 30106(c); *id*. § 30107(a)(6), (a)(9); *id*. § 30109(a)(2), (a)(4)–(6).

That four-vote requirement plays a recurring role in FECA's stepwise enforcement scheme. "Any person who believes a violation" of FECA "has occurred" can file an administrative complaint with the Commission. *Id*. § 30109(a)(1). Upon receiving a complaint, the Commission votes on whether there is "reason to believe" the complaint's allegations. *Id*. § 30109(a)(2). If four or more Commissioners vote to find that there *is* reason to believe a violation has occurred or will occur, the "Commission shall make an investigation of such alleged violation." *Id*. Following any investigation, the Commission votes on whether there is "probable cause to believe" a violation has been or will be committed. *Id.* § 30109(a)(4)(A)(i). If four or more Commissioners vote to find probable cause, the Commission may then pursue an escalating series of enforcement steps, each

of which requires four votes to initiate. *See id*. § 30109(a)(4)(A)(i), (a)(5)(C), (a)(6)(A).

Rather than initiate an investigation, the Commission at any time can dismiss a complaint. *Id*. § 30109(a)(1), (a)(8). Importantly, a dismissal differs from a failed reason-to-believe vote—that is, a vote on whether to find "reason to believe" that fails because fewer than four Commissioners so find. The Commission can properly dismiss a complaint—or "terminate[] the proceedings," 11 C.F.R. §§ 111.9(b), 111.20(a)—in two relevant ways. First, four or more Commissioners can vote to find that there is "*no* reason to believe" a violation has occurred. *Id*. §§ 111.9(b), 111.20(a) (emphasis added). Such a vote occasions dismissal of the complaint, whereas a failed "reason to believe" vote does not. Second, a majority of sitting Commissioners can vote to "dismiss" the matter. *See* 52 U.S.C. § 30106(c); *Doe v. FEC*, 920 F.3d 866, 871 n.9 (D.C. Cir. 2019); *Citizens for Resp. & Ethics in Wash. v. FEC* (*New Models*), 993 F.3d 880, 891 n.10 (D.C. Cir. 2021); *End Citizens United PAC v. FEC*, 90 F.4th 1172, 1180 n.6 (D.C. Cir. 2024). In doing so, the Commission dismisses a complaint without rendering a four-vote decision on its merits.

The Commission often pursues that second option when it is deadlocked—that is, when no bloc of four Commissioners votes to find either reason to believe or *no* reason to believe. Because a reason-to-believe vote resulting in a deadlock will give rise to a dismissal only if a majority of Commissioners separately votes to dismiss the complaint, the phrase we sometimes use—"deadlock dismissal," *see, e.g.*, *Common Cause v. FEC*, 842 F.2d 436, 448–49 (D.C. Cir. 1988); *New Models*, 993 F.3d at 894—is perhaps a convenient shorthand but should not be misunderstood to mean a deadlocked vote constitutes or automatically occasions a dismissal.

If the Commission does not dismiss the complaint after a failed reason-to-believe vote, the case remains open. In that circumstance, the Commission may hold further reason-to-believe votes, and there may be no public disclosure of those votes or any other actions taken by the Commission with respect to the complaint. Rather, until the Commission dismisses the complaint, the Commission cannot publicly disclose the complaint or any investigation or votes related to it (unless the target of the complaint consents to disclosure). *See* 11 C.F.R. § 111.21; 52 U.S.C. § 30109(a)(12)(A). When the complaint is dismissed, the Commission makes public, among other things, the votes taken with respect to the complaint. *See* Disclosure of Certain Documents in Enforcement and Other Matters, 81 Fed. Reg. 50702, 50703 (Aug. 2, 2016); 52 U.S.C. § 30109(a)(4)(B)(ii); 11 C.F.R. §§ 111.9(b), 111.20; *see also id.* §§ 4.4(a)(3), 5.4(a)(4). (One district court in this circuit has held unlawful the Commission's practice of not disclosing failed reason-to-believe votes absent a subsequent dismissal, *Heritage Action for Am. v. FEC*, 682 F. Supp. 3d 62, 73–76 (D.D.C. 2023), but that question is not before us in this appeal.)

2.

As a general matter, an executive agency's decision not to pursue enforcement is presumptively unreviewable. *Heckler v. Chaney,* 470 U.S. 821, 831–33 (1985). FECA, however, contains an unusual provision that sometimes allows for judicial review of Commission nonenforcement decisions, and that also authorizes citizen suits against the alleged violator in certain conditions.

Under that provision, "[a]ny party aggrieved by" the Commission's "dismissal" of a complaint or by its "failure . . . to act on such complaint during the 120-day

period" after receiving it may sue the Commission, seeking a court "declaration" that the dismissal or failure to act is "contrary to law." 52 U.S.C. § 30109(a)(8). The Commission's failure to act within that 120-day period or any other timeframe is not per se contrary to law. Instead, FECA provides a "failure to act" cause of action to the complainant that ripens after that 120-day period, *id.* § 30109(a)(8)(A), and courts analyze the lawfulness of the Commission's challenged inaction under a set of factors laid out in *Common Cause v. FEC*, 489 F. Supp. 738, 744 (D.D.C. 1980), and *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984) (*TRAC*). *See FEC v. Rose*, 806 F.2d 1081, 1084 & n.6, 1091–92 & n.17 (D.C. Cir. 1986).

If a court finds the Commission's failure to act on a complaint (or its dismissal of a complaint) is contrary to law, it "may declare" as much and, further, "may direct the Commission to conform with [that] declaration within 30 days." 52 U.S.C. § 30109(a)(8)(C). If the Commission does not so conform, the original complainant can file a citizen suit: specifically, she can bring "a civil action" in her own name against the subject of the complaint, "to remedy the violation" alleged "in the original complaint." *See id.*

There are thus two preconditions to a citizen suit: (i) a court must declare that the Commission's failure to act on a complaint (or its dismissal of a complaint) is contrary to law and must order the Commission to conform with that declaration; and (ii) the Commission must fail to timely conform with that declaration. *See id*. Unlike the predicate contrary-to-law action, a citizen suit is brought against the subject of the complaint, not the Commission, and it resolves the merits of the complaint's allegations, not the lawfulness of the Commission's failure to act on (or rationale for dismissing) the complaint.

8

B.

1.

In August 2018, Campaign Legal Center (CLC) filed an administrative complaint against 45Committee, Inc. CLC alleged that 45Committee had violated FECA by raising and expending funds in connection with the 2016 presidential election without registering as a political committee. Almost two years later, in March 2020, CLC brought a contrary-to-law suit alleging a failure by the Commission to act on its administrative complaint. *See* 52 U.S.C. § 30109(a)(8)(A). The Commission did not appear in court to defend against the allegation that its evident inaction on CLC's administrative complaint was contrary to law.

Unbeknownst to the court, CLC, or 45Committee, the Commission had held five votes related to CLC's administrative complaint on a single day in June 2020. *See* Amended Certification at 1–2, Fed. Election Comm'n MUR 7486 (Aug. 14, 2020) (June 2020 Certification), https://perma.cc/NW87-4UBK (J.A. 234–35). Among those votes was a reason-to-believe vote that failed 2-2 on a party-line basis. *Id.* at 1 (J.A. 234). The Commissioners also deadlocked 2-2 on whether to authorize the General Counsel to defend against the contrary-to-law suit, so the Commission never participated in the litigation. *Id.* (J.A. 234). Additionally, the Commission held several votes on whether to dismiss the matter (which would have occasioned public disclosure of the various votes), but each also failed on party lines. *See id.* at 1–2 (J.A. 234–35).

The court ultimately entered a default judgment against the Commission. *Campaign Legal Ctr. v. FEC*, No. 20-CV-0809, 2021 WL 5178968 (D.D.C. Nov. 8, 2021). It held that, under the *Common Cause* factors, the Commission's failure to act at

all on the complaint was contrary to law, *id*. at \*5–6, and that the *TRAC* factors weighed in favor of granting mandamus relief, *id*. at \*6–9. The court ordered the Commission "to act on the complaint within thirty days pursuant to 52 U.S.C. § 30109(a)(8)(C)." *Id*. at \*9.

The Commission did not respond to that contrary-to-law decision, nor did it notify CLC or the court of any action taken during the thirty-day period. *See Campaign Legal Ctr. v. FEC*, No. 20-CV-0809, 2022 WL 2111542, at \*1–2 (D.D.C. Apr. 21, 2022). So, on December 9, 2021, thirty-one days after the contrary-to-law decision, CLC asked the court that issued that decision to enter an order finding that the Commission had failed to conform with the contrary-to-law determination, *see id.* at \*1–2, a finding which would pave the way for a citizen suit, 52 U.S.C. § 30109(a)(8)(C).

While CLC's request was pending, 45Committee gained leave to participate as an amicus in the case. *Campaign Legal Ctr.*, 2022 WL 2111542, at \*2. By then, 45Committee had obtained through a Freedom of Information Act request a partially redacted record of the votes the Commission had taken in June 2020. The redactions indicated that multiple votes of some kind had taken place, but details of only one vote—the aforementioned vote on whether to defend the contrary-to-law suit—were unredacted. 45Committee urged the court to infer that the Commission had indeed taken "action" on the complaint and that it "likely voted against enforcement action," meaning the Commission had not in fact engaged in inaction that was contrary to law. *Id.* The court declined to so "speculat[e]," and thus "ordered" that CLC "may bring an action to enforce [] FECA against" 45Committee pursuant to FECA's citizen-suit provision. *Id.* at \*2–3 (capitalization altered).

After the court denied 45Committee's subsequent request to intervene, *Campaign Legal Ctr. v. FEC*, No. 20-CV-0809, 2022 WL 2111560, at *6 (D.D.C. May 13, 2022), 45Committee appealed, seeking review of that denial and of the district court's decision that CLC could bring a citizen suit against it. This court summarily affirmed the denial of intervention and, because 45Committee therefore was not a party, dismissed the appeal. *Campaign Legal Ctr. v. FEC*, Nos. 22-5164, 22-5165, 2022 WL 4280689, at *1 (D.C. Cir. Sept. 14, 2022).

2.

In April 2022, CLC filed this citizen suit against 45Committee. After commencement of the suit, the parties and the district court obtained previously unreleased records that changed the picture in important ways. Those records became available because, in August 2022, the Commission voted to dismiss the complaint and close the file. Certification at 1, Fed. Election Comm'n MUR 7486 (Aug. 29, 2022), https://perma.cc/9656-8FAV (J.A. 243). That dismissal triggered disclosure of all prior votes held with respect to the complaint. Significantly, the records showed that in December 2021—within the thirty-day period after the contrary-to-law order issued—the Commission held a reason-to-believe vote. *Campaign Legal Ctr. v. 45Committee, Inc.*, 666 F. Supp. 3d 1, 4 (D.D.C. 2023). That vote (like the earlier one in June 2020) failed: three Commissioners voted for finding a reason to believe, two voted against, and one abstained. *Id.*; Certification at 1, Fed. Election Comm'n MUR 7486 (Dec. 7, 2021), https://perma.cc/5ZNK-ESKT (J.A. 237).

In light of that December 2021 reason-to-believe vote, the district court dismissed this citizen suit. *45Committee*, 666 F. Supp. 3d. at 5–7. The court held that the vote counted as acting

on the complaint, meaning the Commission *had* conformed with the contrary-to-law decision arising from a failure to act within thirty days, precluding the bringing of a citizen suit. *See id.* at 5. CLC now appeals.

II.

In this appeal, CLC seeks to overturn the district court's dismissal of its citizen suit. CLC's arguments in part arise from the interplay between the two district court decisions that addressed whether FECA's prerequisites for bringing a citizen suit are satisfied.

The initial decision came from the contrary-to-law court—i.e., the court that considered CLC's contrary-to-law suit against the Commission and held that the Commission's evident inaction on CLC's administrative complaint for over two years was contrary to law. That court subsequently held—at a time when the Commission's December 2021 reason-to-believe vote remained undisclosed—that the Commission failed to conform with the contrary-to-law determination within thirty days, enabling CLC to bring a citizen suit. *Campaign Legal Ctr.*, 2022 WL 2111542, at *2–3. The second relevant decision came from the citizen-suit court—i.e., the court below, which considered CLC's ensuing citizen suit against 45Committee. That court learned of the Commission's December 2021 reason-to-believe vote, and held that the Commission, by holding that vote, *had* taken action to conform with the contrary-to-law determination within FECA's thirty-day window, precluding the bringing of a citizen suit. *45Committee*, 666 F. Supp. 3d. at 5–7.

CLC presents two arguments for overturning that decision. First, CLC contends that the citizen-suit court could not revisit the contrary-to-law court's determination that FECA's prerequisites for bringing a citizen suit are satisfied. Rather, in

CLC's view, the citizen-suit court was bound by the contrary-to-law court's holding that the Commission had failed to take action conforming with the contrary-to-law determination within FECA's thirty-day window. CLC's second argument is that, even assuming the citizen-suit court could consider the issue afresh, the Commission's failed reason-to-believe vote did not constitute the kind of conformance with the contrary-to-law determination that precludes a citizen suit. We disagree with both of CLC's arguments.

A.

We begin with whether the contrary-to-law court's determination that FECA's citizen-suit preconditions are satisfied was binding on the citizen-suit court below. We consider that question in two steps. First, are FECA's citizen-suit preconditions jurisdictional, such that the citizen-suit court below could—and indeed had to—consider anew whether they are satisfied? Second, even if the preconditions are nonjurisdictional, did the citizen-suit court still have discretion to revisit whether they are satisfied here? We conclude that FECA's citizen-suit preconditions are nonjurisdictional, but that, in the specific circumstances of this case, the district court nonetheless was not bound to stick with the contrary-to-law court's conclusion that the preconditions were satisfied.

1.

The district court understood the inquiry into whether FECA's citizen-suit preconditions are satisfied to consist of two "prong[s]": (i) there must be a determination that the Commission acted contrary to law (here, by inaction); and (ii) the Commission must fail to conform with that contrary-to-law determination within FECA's thirty-day window. *45Committee*, 666 F. Supp. 3d at 4–6. The court concluded that CLC's citizen suit failed on "prong two": by holding the

December 2021 reason-to-believe vote, the Commission, in the district court's view, had taken conforming "action" within thirty days of the contrary-to-law order. *Id.* at 5.

While the contrary-to-law court had previously held that the Commission had *not* taken conforming action, that court had not known about the Commission's December 2021 reason-to-believe vote. In concluding that it could depart from the contrary-to-law court on that score, the district court below relied on our decision in *Perot v. FEC*, 97 F.3d 553 (D.C. Cir. 1996) (per curiam). There, we observed that FECA's judicial-review provisions set out in 52 U.S.C. § 30109(a), which include the citizen-suit preconditions, are "jurisdictional." *Id.* at 559. In that light, the district court believed it had an "independent obligation to ensure" satisfaction of those preconditions and could not "ignore new evidence that was not before" the contrary-to-law court. *45Committee*, 666 F. Supp. 3d at 5–6 (citation and internal quotation marks omitted).

The district court understandably considered *Perot* binding precedent on whether FECA's citizen-suit preconditions are jurisdictional. But today, we overrule *Perot* as incompatible with intervening Supreme Court decisions. We conclude that FECA's judicial-review requirements—including the citizen-suit preconditions—are nonjurisdictional.[*]

---

[*] "One three-judge panel" of this court "does not have the authority to overrule another three-judge panel of the court." *LaShawn A. v. Barry*, 87 F.3d 1389, 1395 (D.C. Cir. 1996) (en banc). "That power may be exercised only by the full court," either through an *en banc* decision or a so-called *Irons* footnote. *Id.* "In an *Irons* footnote, named after the holding in *Irons v. Diamond*, 670 F.2d 265,

"Congressional statutes are replete with directions to litigants that serve as preconditions to relief," including the kind of preconditions to suit at issue here. *MOAC Mall Holdings LLC v. Transform Holdco LLC*, 598 U.S. 288, 297 (2023) (citation and internal quotation marks omitted). Those sorts of preconditions can be "mandatory" but still nonjurisdictional. *Id.* (citation and internal quotation marks omitted). A statutory rule is jurisdictional only if it "sets the bounds of the court's adjudicatory authority"; "nonjurisdictional rules," by contrast, "govern how courts and litigants operate within those bounds." *Santos-Zacaria v. Garland*, 598 U.S. 411, 416 (2023) (cleaned up).

Since our decision in *Perot*, the Supreme Court has adopted a clear-statement rule to differentiate jurisdictional rules from nonjurisdictional ones. *Id.* (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515–16 (2006)). A statutory rule qualifies as jurisdictional only if it is "unmistakably" clear that Congress intended that result. *Id.* at 416–17. That is a high bar: while "Congress need not use magic words to convey its intent that a statutory precondition be treated as jurisdictional,"

---

267–68 & n.11 (D.C. Cir. 1981), the panel 'seeks for its proposed decision the endorsement of the *en banc* court, and announces that endorsement in a footnote to the panel's opinion.'" *Oakey v. U.S. Airways Pilots Disability Income Plan*, 723 F.3d 227, 232 n.1 (D.C. Cir. 2013) (cleaned up) (quoting U.S. Ct. of Appeals for the D.C. Cir., Policy Statement on En Banc Endorsement of Panel Decisions at 1 (Jan. 17, 1996), https://perma.cc/86UC-M6GM). Our holding today—overruling *Perot* and establishing that FECA's preconditions are nonjurisdictional—has been approved by the *en banc* court and therefore constitutes the law of the circuit. *Cf. Robinson v. Dep't of Homeland Sec. Off. of Inspector Gen.*, 71 F.4th 51, 55–58, 56 n.1 (D.C. Cir. 2023) (overturning through an *Irons* footnote, in light of intervening Supreme Court decisions, a circuit decision that had deemed a statutory rule jurisdictional).

"it is insufficient that a jurisdictional reading is plausible, or even better, than nonjurisdictional alternatives." *MOAC*, 598 U.S. at 298 (citations and internal quotation marks omitted). And a statutory precondition is jurisdictional only if it "purports to govern a court's adjudicatory capacity" by speaking directly to "a court's authority" over claims brought under the statute. *See id.* at 299 (cleaned up).

FECA contains no language expressing with the requisite clarity that its judicial-review provisions are jurisdictional. In *Perot*, our court reasoned that § 30106(b)(1) and § 30107(e) made the "requirements" in § 30109(a)(8)—which include the preconditions to bringing a citizen suit—jurisdictional. 97 F.3d at 557–58. In relevant part, § 30106(b)(1) provides that "[t]he Commission shall . . . seek to obtain compliance with" FECA and "shall have exclusive jurisdiction with respect to [its] civil enforcement." 52 U.S.C. § 30106(b)(1). Similarly, § 30107(e) specifies that, except insofar as FECA permits citizen suits, "the power of the Commission to initiate civil actions . . . shall be the exclusive civil remedy for the enforcement of the provisions of this Act." *Id.* § 30107(e) (citing *id.* § 30109(a)(8)).

Neither provision limits the jurisdiction of the federal courts: rather than address a court's adjudicatory authority, those provisions "take[] as a given" that federal courts will have subject-matter jurisdiction over civil actions under FECA, *see MOAC*, 598 U.S. at 299, and serve only to specify who can bring a civil action and when. *Perot* thus deemed § 30109(a)'s requirements jurisdictional by relying on statutory language addressed to the *Commission's* authority to *prosecute* civil actions. As the Supreme Court has since clarified, though, a statutory requirement is jurisdictional only if it speaks to *courts'* authority to *adjudicate* actions.

What about paragraphs (8) and (9) of § 30109(a), the judicial review provisions central to this case? First, subparagraph (8)(A) requires contrary-to-law suits to be brought only in the District Court for the District of Columbia. *See* 52 U.S.C. § 30109(a)(8)(A). Though that subparagraph mentions federal courts, it does not "refer in any way to the *jurisdiction* of the district courts." *Arbaugh*, 546 U.S. at 515 (emphasis added) (citation omitted). That provision takes for granted that federal courts would have subject-matter jurisdiction over contrary-to-law claims and simply channels contrary-to-law suits to a specific district court. Next, paragraph (9) specifies that district court judgments in contrary-to-law actions, citizen suits, and Commission-instituted civil enforcement actions can be appealed to the relevant court of appeals. 52 U.S.C. § 30109(a)(9); *see also id.* § 30109(a)(5)–(6), (8). One might read paragraph (9) to grant federal courts appellate jurisdiction over actions brought pursuant to FECA; but it is at least as plausible that the paragraph presupposes appellate jurisdiction actions and simply clarifies that parties have a right to appeal and those appeals will be heard by the relevant circuit (rather than, say, consolidated in this circuit).

Finally, consider subparagraphs (8)(A) and (8)(C). As we have explained, subparagraph (8)(A) establishes that the party who submitted an administrative complaint may bring a contrary-to-law suit if she is "aggrieved by" the Commission's dismissal of the complaint or failure to act on it within 120 days of its filing. *See id.* § 30109(a)(8)(A). Subparagraph (8)(C) then provides that in such a contrary-to-law suit, the court "may declare" that the Commission's dismissal or failure to act was "contrary to law," and "may direct the Commission to conform with such declaration within 30 days." *Id.* § 30109(a)(8)(C).

Those subparagraphs should be read as nonjurisdictional limitations. They closely resemble the judicial-review provisions of the Administrative Procedure Act. *See* 5 U.S.C. § 702 ("A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action . . . , is entitled to judicial review thereof."); *id.* § 706(2)(A) ("The reviewing court shall . . . hold unlawful and set aside agency action . . . found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]"). And those APA provisions are nonjurisdictional: rather than grant a court subject-matter jurisdiction, they "provide a limited cause of action for parties adversely affected by agency action," and a court hearing an APA claim has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331. *Oryszak v. Sullivan*, 576 F.3d 522, 524–25 (D.C. Cir. 2009) (cleaned up) (quotation marks and citation omitted). Subparagraphs (8)(A) and (8)(C) of § 30109(a)(8) mirror those nonjurisdictional cause-of-action-granting provisions in the APA, and thus are best understood as likewise nonjurisdictional.

2.

We turn now to considering whether, in light of our conclusion that FECA's citizen-suit preconditions are nonjurisdictional, the district court erred by reconsidering the contrary-to-law court's prior decision that the preconditions had been satisfied in this case. We conclude that, in the specific circumstances of this case, the district court was free to revisit whether the preconditions are met after it learned about the previously undisclosed December 2021 reason-to-believe vote.

Our decision in *Campaign Legal Center v. Federal Election Commission* (*Heritage Action*), 68 F.4th 607 (D.C. Cir. 2023), compels that conclusion. There, like here, the

object of the administrative complaint—Heritage Action for America—unsuccessfully tried to intervene in a contrary-to-law suit against the Commission. *Campaign Legal Ctr. v. FEC*, No. CV 21-406, 2022 WL 1978727 (D.D.C. June 6, 2022). And there, again like here, the Commission failed to make an appearance, and the contrary-to-law court entered a default judgment that the Commission's failure to act was contrary to law. *Id.* at *1. As in our case, the contrary-to-law court then found that the citizen-suit preconditions were satisfied because the Commission failed to conform with the contrary-to-law decision within thirty days. *Id*. And—again like in our case—after the default contrary-to-law decision, Heritage Action filed a FOIA request with the Commission seeking information about any Commission action taken on the administrative complaint against it. *Id*. at *1, *2. (Unlike in our case, that FOIA request was still pending at the time of the district court's decision on intervention. *Id*. at *2.)

Our court affirmed the contrary-to-law court's denial of intervention to Heritage Action. *Heritage Action*, 68 F.4th at 610–11. We relied on the notion that issue preclusion would not preclude revisiting whether the citizen-suit preconditions were satisfied. *See id.* at 611. We explained that, because "Heritage Action was not a party to the default judgment in [the contrary-to-law suit] against the Commission," it "would not be prevented from arguing" in the citizen suit that the preconditions "ha[d] not been met." *Id*. (citing 52 U.S.C. § 30109(a)(8)(C)). We also invoked two Supreme Court decisions addressing issue preclusion. *See id.* We cited the portion of the Court's decision in *Herrera v. Wyoming* in which the Court observed that "an exception" to issue preclusion "may be warranted if there has been an intervening change in the applicable legal context," including when the "controlling facts" have changed. 587 U.S. 329, 343 (2019) (citation and internal quotation marks omitted). And we cited a section of

the Supreme Court's decision in *Arizona v. California* that explained that default judgments do not have preclusive effect. 530 U.S. 392, 414 (2000).

In *Heritage Action*, then, we indicated three reasons why the contrary-to-law court's determination that the citizen-suit preconditions were satisfied would not be preclusive on the citizen-suit court. *See* 68 F.4th at 611. All three factors are also present in our case: (i) 45Committee was not a party to the proceedings in which the contrary-to-law court decided that the Commission had failed to conform with its contrary-to-law order; (ii) that decision was a default judgment; and (iii) new facts materially bearing on the issue became known after the decision. In those pivotal respects, the preclusion question before us is indistinguishable from the one in *Heritage Action*. That decision's conclusion that there is no preclusion thus governs here as well. *See LaShawn A.*, 87 F.3d at 1393 ("[T]he same issue presented in a later case in the same court should lead to the same result." (emphasis omitted)).

For those reasons, the citizen-suit court below was not bound by the contrary-to-law court's prior decision that the Commission had failed to timely conform with its contrary-to-law determination. The citizen-suit court thus could take into account pertinent information that had been unknown to the contrary-to-law court: that the Commission had held a reason-to-believe vote within thirty days of the contrary-to-law determination. If the Commission's holding of that reason-to-believe vote constituted conformance with the contrary-to-law determination, FECA's citizen-suit preconditions would be unmet and CLC could not bring its citizen suit. That is what the district court below decided, and we now turn to assessing the merits of that conclusion.

20

B.

By way of a brief refresher, recall that a contrary-to-law decision can arise either from the Commission's "dismiss[al] [of] a complaint" or from its "failure . . . to act on such [a] complaint." 52 U.S.C. § 30109(a)(8)(A). And recall further that the citizen-suit preconditions are unmet if the Commission "conform[s] with" a contrary-to-law decision within thirty days of having been "direct[ed]" to do so by the contrary-to-law court. *Id*. § 30109(a)(8)(C). Here, the Commission's failure to act on CLC's complaint against 45Committee was deemed contrary to law, but within thirty days of that decision, the Commission held a reason-to-believe vote. *45Committee*, 666 F. Supp. 3d at 3–4. That vote failed to garner the four votes necessary to either find reason to believe (and thus initiate an investigation) or find *no* reason to believe (and thus dismiss the complaint). *Id*. at 4. And while the Commission voted later that same day on dismissing the complaint, that vote, too, failed to gain a majority, so the complaint remained pending at the end of the thirty-day period. *Id*.

The issue we face is whether the Commission's holding the failed reason-to-believe vote constituted conformance with the contrary-to-law determination. If so, the district court correctly dismissed CLC's citizen suit. The parties agree that, to conform with a declaration that its failure to act on an administrative complaint was contrary to law, the Commission must *act* on the complaint. They disagree, however, about what counts as action, much less about what constitutes *conforming* action.

CLC contends that, following a contrary-to-law suit resulting from a failure to act, only a majority-supported decision can count as conforming action because, under FECA, the Commission can act only through majority vote. In CLC's

view, then, only two outcomes can constitute conforming action: a *successful* reason-to-believe vote (i.e., a four-vote decision to pursue an investigation), or a majority decision to dismiss the complaint. As a result, says CLC, because the reason-to-believe vote here failed and the Commission did not dismiss the complaint within the thirty-day window, there was no conformance and CLC can bring its citizen suit.

We are unpersuaded. The Commission's need to conform followed a determination that its "failure to *act*" on an administrative complaint was contrary to law, *see* 52 U.S.C. § 30109(a)(8) (emphasis added), not that its failure to render an ultimate *decision* on the complaint was contrary to law. When a contrary-to-law decision arises from the Commission's failure to act on a complaint at all, the Commission conforms by holding a reason-to-believe vote, regardless of the vote's outcome. That conclusion follows from two propositions derived from FECA's text and structure. First, what counts as conforming action depends on what action the contrary-to-law plaintiff was entitled to compel. Second, when the contrary-to-law suit is based on the Commission's failure to take any action at all on a pending complaint, the plaintiff seeks to compel the Commission to take at least some cognizable enforcement step under the statute, and holding a reason-to-believe vote counts as such a step.

With regard to the first of those propositions, the parties agree that what counts as conforming action depends on the type of contrary-to-law determination with which the Commission must conform. What constitutes conformance, in other words, necessarily turns on the kind of Commission action the contrary-to-law plaintiff was entitled to compel by bringing her contrary-to-law suit. And what the plaintiff can compel is the action whose nonperformance by the Commission "aggrieved" her. *See* 52 U.S.C. § 30109(a)(8)(A),

(C). That is, she can compel the action that, had it been performed, would have left her without the ability to bring (or win) her contrary-to-law suit.

So what *is* that action? In the case of a contrary-to-law suit alleging that the Commission has failed to take any action at all on a pending complaint, we think that holding a reason-to-believe vote is an action that would enable the Commission to prevent (or prevail in) the suit.

As an initial matter, to "act" on a pending complaint, in this context, means to take some enforcement step recognized by the statute. To be sure, the enforcement provision of FECA—§ 30109—does not use "act" (or "action") so consistently that the term refers to precisely the same conduct throughout. For example, § 30109 uses "action" to describe conduct undertaken by both the Commission and non-Commission actors. *Compare, e.g.*, 52 U.S.C. § 30109(a)(4)(B)(i), *with id*. § 30109(c). That said, in the provisions specifically discussing Commission enforcement, "action" denotes a step in FECA's enforcement scheme. *See, e.g.*, *id*. § 30109(a)(4)(A)(i) ("A conciliation agreement, unless violated, is a complete bar to any further action by the Commission, including the bringing of a civil proceeding . . . ."); *id*. § 30109(b) ("Before taking any action under subsection (a) against any person who has failed to file a report . . . .").

Moreover, a failure by the Commission to act at all on a pending complaint means a failure to take some cognizable enforcement step under the statute in response to the complaint. And holding a reason-to-believe vote is such a step. Consider the provision of FECA that prescribes the initial process that follows submission of an administrative complaint:

Within 5 days after receipt of a complaint, the Commission shall notify, in writing, any person alleged in the complaint to have committed such a violation. Before the Commission *conducts any vote on the complaint*, other than a vote to dismiss, any person so notified shall have the opportunity to demonstrate, in writing, to the Commission within 15 days after notification that no action should be taken against such person on the basis of the complaint.

*Id*. § 30109(a)(1) (emphasis added). By forbidding the Commission from "conduct[ing] *any vote* on the complaint[] other than a vote to dismiss" until the alleged violator can respond to the allegations, the statute manifests that "conduct[ing]" a reason-to-believe vote is a cognizable enforcement step. *See id.* (emphasis added).

The broader enforcement scheme reinforces that understanding. If a failure to act on a pending complaint meant a failure to *find* reason to believe—as opposed to a failure to conduct a reason-to-believe vote—then a contrary-to-law suit challenging a failure to act and one challenging a dismissal following a failed reason-to-believe vote would ultimately complain about the same thing: a failure to find a reason to believe. But collapsing those two kinds of contrary-to-law suits in that manner would make no sense under the statute, which treats a failure to act and a dismissal as distinct. *E.g.*, *id*. § 30109(a)(8)(A) ("Any party aggrieved by an order of the Commission dismissing a complaint . . . *or* by a failure of the Commission to act on such complaint . . . .") (emphasis added). So, too, does this court: we review a dismissal by considering the rationale offered by the Commissioners who voted against enforcement, whereas we review a failure to act by considering the factors laid out in *Common Cause* and *TRAC*. *See Citizens*

*for Resp. & Ethics in Wash. v. FEC*, 892 F.3d 434, 437–38 (D.C. Cir. 2018); *FEC v. Rose*, 806 F.2d at 1084 & n.6.

In short, when a complainant brings a contrary-to-law suit based on a failure by the Commission to act at all on a pending complaint, the Commission's conduct of a reason-to-believe vote would conform with a decision finding that its failure to act was contrary to law.  Whether the vote succeeds or fails does not matter:  a reason-to-believe vote that fails 3-3 or 0-6, or one that succeeds 4-2 or 5-1, are all equivalent for purposes of conforming with the failure-to-act decision.  That is because what the contrary-to-law plaintiff claims as the reason for her "aggrieve[ment]," 52 U.S.C. § 30109(a)(8), is not the Commission's failure to vote in favor of finding reason to believe, but instead is the Commission's failure to hold such a vote at all.  FECA entitles her, through a contrary-to-law action, to compel the Commission's engagement with the merits of her administrative complaint through such a vote; it does not entitle her to a particular vote outcome.

While CLC urges us to require more of the Commission, forcing the Commission to engage with the merits of a complaint is significant in itself:  it prods into motion FECA's judicial-review and enforcement scheme.  To conform with a decision that declares the Commission's failure to act at all on a complaint contrary to law, the Commission can hold a reason-to-believe vote.  If the Commission does not conform, the complainant can bring a citizen suit.  If the Commission does hold a reason-to-believe vote and finds reason to believe a violation has occurred, an investigation follows.  If the Commission fails to find reason to believe and then dismisses the complaint, the complainant can potentially bring another contrary-to-law suit—this time, based on the Commission's dismissal.

Returning to this case, for the Commission to conform with the declaration that its failure to act on the complaint was contrary to law, it needed to hold a reason-to-believe vote within thirty days of being directed to do so. Unbeknownst to the contrary-to-law court, the Commission did that. The Commission thereby conformed with the contrary-to-law decision, rendering the preconditions for a citizen suit unsatisfied. We thus affirm the district court's dismissal of CLC's citizen suit, although we do so on the ground that CLC failed to state a claim, rather than for lack of jurisdiction, *see EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997), because we hold that the citizen-suit preconditions are nonjurisdictional.

\* \* \* \* \*

For the foregoing reasons, the judgment of the district court is affirmed.

*So ordered.*